FILED

2011 MAR -2 PM 3: 57

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA CALIF.

FINKELSTEIN & KRINSK LLP
HOWARD D. FINKELSTEIN (102964)
hdf@classactionlaw.com
JEFFREY R. KRINSK (109234)
jrk@classactionlaw.com
MARK L. KNUTSON (131770)
mlk@classactionlaw.com
C. MICHAEL PLAVI II (217153)
cmp@classactionlaw.com
501 West Broadway, Suite 1250
San Diego, CA 92101
Telephone: 619/238-1333
619/238-5425 (fax)

Attorneys for Plaintiffs and the Putative Class

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| MAXINE DERRY and RUSSELL HEMEN, Individually, and on Behalf of Themselves and All Others Similarly Situated. <br><br> Plaintiffs, <br><br> vs. <br><br> JACKSON NATIONAL LIFE INSURANCE COMPANY, a Michigan corporation. <br><br> Defendant. | Case No. **SACV11-00343 DOC (RNBx)** <br><br> CLASS ACTION <br><br> CLASS ACTION COMPLAINT FOR: <br><br> 1. Violations of Cal. Bus. & Prof. Code §17200 et seq. <br><br> 2. Violations of Financial Elder Abuse, Welf. & Instit. Code §15600 et seq. <br><br> DEMAND FOR JURY TRIAL |

BY FAX

- 1 -
Class Action Complaint

1   1.  Plaintiffs Maxine Derry and Russell Hemen ("Plaintiffs"), by and
2 through their attorneys, bring this class action complaint against Jackson National Life
3 Insurance Company ("Jackson National," "JNL" or "Defendant") on behalf of
4 themselves and all other similarly situated California senior citizen purchasers of
5 Jackson National deferred annuity products. Upon information and belief, as well as
6 the investigation of counsel, Plaintiffs allege as follows:

## INTRODUCTION

8   2.  Plaintiffs bring this California state-wide class action on behalf of
9 themselves and all other similarly situated senior citizens to halt and remedy the harm
10 caused by Defendant's systematic unfair, deceptive and unlawful sales practices in
11 connection with the solicitation, offering and sale of fixed interest and equity-indexed
12 deferred annuity products ("deferred annuities"), excluding variable annuities. As
13 alleged herein, Defendant engaged in unfair, deceptive and unlawful business
14 practices to market and sell deferred annuities to senior citizens in this state
15 misrepresenting and/or without fully disclosing all material facts, costs and risks
16 associated with the deferred annuity products. These material facts were known
17 only by Jackson National. Defendant also fails to comply with California's
18 statutory disclosure requirements concerning the sale of deferred annuities to senior
19 citizens and disclosure of surrender periods and all associated surrender penalties.

20   3.  Defendant targets senior consumers like Plaintiffs as prospective
21 purchasers of deferred annuities even though they are unlikely to receive any benefit
22 from the deferred annuity because of the long-term nature of the product due to
23 extended maturity dates (*i.e.*, the date on which the annuities may be surrendered
24 without any penalties), and confiscatory product features such as high surrender
25 charges and penalties for early surrender, illusory bonus features, initial teaser rates
26 and other product features that penalize senior citizen purchasers who have limited
27 investment horizons and need unfettered access to their funds. Jackson National's
28 policy forms, marketing materials, brochures and presentations omit or fail to fully

1 disclose all material facts and risks associated with the deferred annuity products,
2 including, but not limited to, high undisclosed agent commissions and product
3 mechanics that adversely affect investment performance and tie up seniors' money for
4 up to 10 years or more while carrying exorbitant surrender charges.

5     4.    Defendant's unfair and illegal business practices, misrepresentations
6 and omissions of material fact include, *inter alia*, that:

7 • Jackson National deferred annuity products contain no up front sales
8   charges, loads, expenses or fees when in fact they contain large undisclosed
9   commissions;

10 • High undisclosed agent commissions and related charges adversely affect the
11   annuities' account values and performance;

12 • 100% of premiums begin earning interest immediately when in fact Jackson
13   National only invests a portion of each premium dollar and the account
14   values are diminished by excessive undisclosed surrender charges and other
15   penalties;

16 • Jackson National deferred annuity products provide safety of principle
17   and/or no risk of loss when in fact the annuities expose senior purchasers to
18   market and credit risk, default risk and penalties that may result in the loss of
19   principle;

20 • First year interest rate bonuses boost accumulation values when in fact the
21   bonuses are illusory because Jackson National recoups the bonuses by
22   adjusting credited rates, index caps and other features to the detriment of
23   policy owners;

24 • Jackson National deferred annuities include lengthy surrender periods / high
25   surrender charges and other penalties associated with surrender which are
26   not disclosed in accordance with California law;

27
28

1    • Jackson National deferred annuities include undisclosed surrender penalties
2      and charges such as a bias built into so-called market value adjustment
3      provisions; and

4    • JNL fails to disclose the rates used to determine annuity payments under the
5      JNL deferred annuities and fails to disclose that these rates are far lower than
6      the rates paid on single premium immediate annuities otherwise available in
7      the marketplace.

8    5.    In addition to the material inadequate disclosures and misrepresentations
9    identified herein, Defendant targets and continues to design, solicit, market, sell
10   deferred annuity policies to the elderly, including Plaintiffs and the Class. Defendant
11   designs and markets its deferred annuity products towards senior citizens because they
12   control a substantial amount of this country's wealth. Through its distribution
13   subsidiary and network of contracted sales agents ("Agents"), Defendant trains and
14   encourages agents to market and sell its deferred annuity products using Jackson
15   National marketing materials, brochures and presentations, encouraging senior
16   consumers to consolidate their savings and other investments into Defendant's
17   deferred annuities. During the relevant period, Jackson National collected billions in
18   total premiums from deferred annuity sales to senior citizens in California.

19   6.    Plaintiffs allege that Defendant's deferred annuity sales practices
20   described herein violate California's, unfair competition and financial elder abuse
21   laws. Plaintiffs allege that Defendant's deferred annuity sales practices described
22   herein violate Cal. Bus. & Prof. Code §§17200, *et seq*. Plaintiffs allege that
23   Defendant's sales practices violate Cal. Welf. & Inst. Code §§15600, *et seq*. Through
24   this action, Plaintiffs do not assert any claims that are based on or grounded in fraud.

25
26
27
28

- 4 -

1   7.   Plaintiffs through this action seek certification of the following class of
2   Jackson National fixed and fixed indexed deferred annuity purchasers:

3       All California residents age 60 or older at the time of purchase and within the
4       applicable statute of limitations, who, purchased or surrendered one or more
        Jackson National Life Insurance Company deferred annuity products.
5

6   8.   This action seeks to enjoin Defendant from engaging in its illegal and
7   unconscionable sales practices, including the form and substance of their disclosures
8   regarding the drawbacks of deferred annuities and disclosing all material facts
9   regarding the costs, features, attributes and risks associated with the products.

10  9.   Plaintiffs seek other equitable remedies, including rescission,
11  disgorgement of ill-gotten profits, reformation and such other equitable relief as may
12  be appropriate to redress Defendant's wrongful conduct in selling deferred annuity
13  products to seniors. Plaintiffs additionally seek monetary relief and punitive, treble
14  and/or statutory damages for violations of elder abuse statutes of California. This
15  action also seeks to compensate the victims of Defendant's practices and penalize
16  Defendant for its wrongful practices.

17              **JURISDICTION AND VENUE**

18  10.   This Court has original jurisdiction over the subject matter of this action
19  pursuant to 28 U.S.C. §1332. The Court has supplemental jurisdiction over the state
20  law claims pursuant to 28 U.S.C. §1367. The amount in controversy exceeds $75,000
21  for each plaintiff, exclusive of costs and interest. Furthermore, the aggregate amount
22  in controversy for this class action exceeds $5,000,000, and all members of the
23  putative class are citizens of a State different from Defendant. *See* Class Action
24  Fairness Act ("CAFA"), 28 U.S.C. §1711.

25  11.   Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules
26  of Civil Procedure ("F.R.C.P."). Venue is proper in this District pursuant to 28 U.S.C.
27  §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs'
28  claims occurred in this District. Venue is also proper under 18 U.S.C. §1965(a)

- 5 -
Class Action Complaint

1 because Plaintiffs reside in this District, Plaintiff Maxine Derry is a resident of Garden
2 Grove, California, and Defendant maintains offices, has agents, transacts business,
3 and is located here.

## PARTIES

5     12.   At all relevant times, Plaintiff Maxine Derry was at all relevant times and
6 is currently a resident of Garden Grove, California. Plaintiff Derry was age 70 at the
7 time he was sold two Jackson National deferred annuity products as further described
8 in ¶ 47.

9     13.   At all relevant times, Plaintiff Russell Hemen was at all relevant times
10 and is currently a resident of Riverside, California. Plaintiff Hemen was age 73 at the
11 time he was sold two Jackson National deferred annuity products as further described
12 in ¶¶ 48-49.

13     14.   Defendant Jackson National is a Michigan corporation headquartered in
14 Lansing, Michigan and is licensed to transact insurance in 50 states and the District of
15 Columbia. Directly and through subsidiaries, Jackson National manufactures and
16 offers a variety of insurance products and services, including life insurance, annuities,
17 property and casualty and other products and services. Defendant conducts a
18 substantial amount of fixed and fixed indexed business in California, including to
19 senior citizens.

20     15.   Jackson National manufactures and sells insurance and investment
21 products geared primarily toward retirees and seniors, with the majority of its sales
22 being deferred annuities. According to Defendant's website, Jackson National was the
23 4th largest seller of both fixed and fixed indexed annuities in the U.S. in 2009.
24 Jackson National is recognized by ratings agencies such as A.M. Best Ratings as one
25 of the largest individual annuity writers in the U.S. life insurance industry. As of
26 December 31, 2009, Jackson National had $88 billion in total assets under
27 management.

28

- 6 -
Class Action Complaint

1

## FACTUAL ALLEGATIONS

2 **Deferred Annuity Products**

3      16.    An annuity is a contract between the annuity owner and an insurance
4 company pursuant to which the owner makes an upfront lump-sum payment or a
5 series of payments to the insurance company. The insurance company, in turn, agrees
6 to make payments to the designated annuitant over a period of time. With a standard
7 or "immediate" annuity, the consumer has a right to a stream of income via payments
8 from the insurance company that is usually guaranteed to last for a period certain
9 and/or for as long as the consumer is alive.

10     17.    With a deferred annuity, the owner foregoes payment until some point in
11 the future. During this deferral period, the earnings on the owner's premium
12 payments grow, tax-deferred. Thus, deferred annuities are very different from
13 immediate annuities and provide a long-term investment vehicle, not an immediate
14 income stream and effectively lock up the purchaser's money for lengthy periods,
15 typically up to 10 years or more. The annuities at issue in this Complaint are deferred
16 annuities (specifically, "fixed" deferred and "equity indexed" deferred annuities).

17     18.    There are at least two kinds of deferred annuities: a "fixed interest"
18 deferred annuity and an " equity indexed" deferred annuity, both of which by their
19 very nature and design, are highly complex investment products.

20          (a)    A "fixed interest" annuity is an annuity in which the insurance
21 company offers a guaranteed interest rate for a set period of time on the annuitant's
22 premium payments. Fixed interest annuities typically are marketed as providing
23 safety of principle, a guaranteed minimum interest crediting rate, a projected rate of
24 return and tax deferred earnings.

25          (b)    An "equity indexed" (also referred to as "fixed indexed") annuity
26 is a variation of an annuity in which the amounts the company credits to the account

27

28

- 7 -
Class Action Complaint

1 values fluctuates depending upon the performance of a stock market index, such as
2 the S&P 500.¹ Equity indexed annuities are typically offer an option for the premium
3 to be allocated to a fixed interest account or to an equity-linked account purportedly
4 affording the opportunity for additional growth based on market performance –
5 subject to various participation and interest rate caps and other limitations. In short,
6 equity indexed annuities are complex derivative products that lend themselves to
7 abusive sales practices and have recently been heavily scrutinized by regulators.

8     19.   With a deferred annuity, the annuitant cannot withdraw their investment
9 or the earned interest without incurring a penalty for a number of years after the initial
10 payment of the premium. The penalty for early surrender of either principal or
11 earnings greater than a specified "penalty free" amount is called a "surrender charge."
12 The percentage of the surrender charge typically starts as high as 9-12%, declining
13 over a period of nine to twelve years. The surrender charge is a hefty penalty to
14 discourage early surrender of principal or earnings from an annuity so the Company
15 can recover the large undisclosed Agent commissions, any "bonuses" used to lure
16 unsuspecting consumers and other charges and company profits. As a result, the terms
17 of deferred annuities severely limit the availability of senior purchasers' funds until
18 Jackson National has recouped its high agent commission payments, "bonuses", other
19 costs, expenses and profit margins.

20     20.   Deferred annuities, whether fixed interest or equity indexed, are typically
21 designed and based on substantially similar product chassis and contain the same core
22 fundamental concepts and features. In many instances, deferred annuity products are

23

24

25     ¹   The "S&P 500" is the Standard & Poor's 500 index, which is a capitalization-
weighted index of 500 stocks. Considered to be a benchmark of the overall stock
26 market, this index is comprised of 500 widely-held Blue Chip stocks representing
industrial, transportation, utility and financial companies with a heavy emphasis in
27 industrials. The S&P 500 index is commonly used to measure stock market
performance.

28

1 designed, marketed and sold as a series or family of products which contain similar
2 features with certain limited variations or options.

3      21.    Under California Insurance Code §1631, only licensed insurance agents
4 may solicit, offer and sell deferred annuities. This licensing requirement is intended
5 to help ensure that consumers receive appropriate information when purchasing a
6 deferred annuity and a level of integrity and accountability. It also attempts to ensure
7 that agents refrain from misleading vulnerable consumers to sell these complex
8 products because the agent is subject to regulations and legal duties requiring him or
9 her to disclose all facts and information within his or her knowledge regarding a
10 marketed insurance product which may be "material" to a prospective annuitant's
11 decision to purchase such products. *See, e.g.*, Cal. Ins. Code §§ 330, 331, 332 and
12 334.

13 **Jackson National's Marketing and Sale of Deferred Annuity Products**

14      22.    Defendant Jackson National markets and sells its deferred annuity
15 products in California (and on a national basis) primarily through its network of
16 appointed individual sales Agents and Agents associated with banks and financial
17 institutions.

18      23.    To effectuate the sales process, Agents enter into contractual agreements
19 with Defendant to sell its deferred annuities and are required to adhere to the sales
20 procedures, protocols and materials dictated, prepared and/or approved by Defendant.
21 These sales protocols and procedures include the use of standard annuity policy forms,
22 marketing materials, consumer product guides, agent-use-only materials, illustrations
23 created and/or authorized by Defendant.

24      24.    Defendant Jackson National and its distribution subsidiary Jackson
25 National Life Distributors, LLC, design, disseminate and approve standardized
26 information including, policy forms, brochures, illustrations, marketing and sales
27 materials to Agents for effectuating the sale of deferred annuities. These materials
28 systematically misrepresent, omit and fail to adequately disclose or downplay the

- 9 -

1 substantial, costs, risks, drawbacks and other adverse features inherent in its deferred
2 annuity products which are particularly harmful to seniors.

3     25.    Defendant targets and agents systematically solicit, market and sell
4 deferred annuities to seniors using deceptive sales tactics and methods such as
5 offering senior specific financial counseling, seminars and utilizing senior financial
6 planning credentials to induce their trust, obtain personal financial information, and
7 persuade them to convert their savings and other investments such as stocks, bonds,
8 mutual funds, 401(k)'s, 403(b)'s, IRAs, CDs, and life insurance policies into deferred
9 annuities.   Senior citizens are an ideal target for Defendant's scheme and are
10 particularly susceptible to these deceptive and misleading business practices. Many
11 seniors have a diminished ability to understand complex investment transactions,
12 harbor concerns about risky investments and fear outliving their assets. Defendant
13 and its Agents pursue senior citizens with sales tactics designed to lure them into
14 converting their assets and investments into deferred annuities.

15     26.    Defendant's marketing materials are designed to appeal to seniors and
16 prey on their fears of risky or insecure investments. Defendant's marketing materials
17 deceptively misrepresent and promote product features purportedly providing security
18 of principal, wealth accumulation through generous returns, liquidity and other
19 attributes to appeal to seniors without disclosing the material facts from which a
20 consumer would discern that the Jackson National deferred annuities in reality are
21 illiquid, poorly performing products with substantial costs and drawbacks.

22     27.    Industry concerns regarding the deceptive sale of deferred annuities to
23 seniors have been well documented through various media outlets including by way of
24 example, Dateline NBC expose entitled "*Tricks of the Trade*" (NBC broadcast April
25 13, 2008); Inside Edition special entitled "*Inside Edition Investigates Tactics of*
26 *Bankers Life & Casualty* Agents" (CBS broadcast June 11, 2010); NY Times, "*Who's*
27 *preying on Your Grandparents*", N.Y. Times, May 15, 2005.

28

1    28.    Defendant knows that their business practices are unfair, deceptive and
2  unlawful, and that the deferred annuities they market and sell contain numerous
3  disadvantages for senior consumers.  Nonetheless, Defendant has continued to
4  deceptively design, promote and sell deferred annuities to senior.

5    29.    In addition, Jackson National and its Agents fail to disclose the full extent
6  of their business relationships, commissions and other incentives to sell Defendant's
7  deferred annuity products, and therefore Plaintiffs and class members are unaware of
8  the conflict of interest and adverse impact on policy values and performance created
9  by these relationships.  Unbeknownst to Plaintiffs and the Class, Defendant offers
10  lucrative sales commissions, incentives and other promotions to its Agents for selling
11  its deferred annuity products.  Defendant, in turn, receives immense profits and
12  maintains or increases its market share from the sale of deferred annuities.

13    30.    Defendant pays their Agents high commissions and incentives for
14  targeting and selling deferred annuities to senior citizens.  By doing so, Defendant
15  induces, condones and encourages their Agents to engage in aggressive and predatory
16  marketing tactics, including targeting and exploiting the vulnerability and concerns of
17  senior citizens.

18    31.    To perpetrate its unfair, deceptive and unlawful business practices to
19  senior citizens, Defendant misrepresents, omits, and fails to fully disclose critical
20  information about the true costs, attributes and risks of Jackson National deferred
21  annuities, including the failure to comply with statutory mandated disclosure
22  requirements which if disclosed, would reveal that Jackson National deferred
23  annuities are inferior to other investment products and are unlawfully and deceptively
24  sold to senior citizens.  These material misrepresentations and omissions include the
25  following:

26    • Jackson National deferred annuity products contain no up front sales
27       charges, loads, expenses or fees when in fact they contain large undisclosed
28       commissions;

- 11 -

1
2

- High undisclosed agent commissions and related charges adversely affect the annuities' account values and performance;

3
4
5
6

- 100% of premiums begin earning interest immediately when in fact Jackson National only invests a portion of each premium dollar and the account values are diminished by excessive undisclosed surrender charges and other penalties;

7
8
9
10

- Jackson National deferred annuity products provide safety of principle and/or no risk of loss when in fact the annuities expose senior purchasers to market and credit risk, default risk and penalties that may result in the loss of principle;

11
12
13
14

- First year interest rate bonuses boost accumulation values when in fact the bonuses are illusory because Jackson National recoups the bonuses by adjusting credited rates, index caps and other features to the detriment of policy owners;

15
16
17

- Jackson National deferred annuities include lengthy surrender periods / high surrender charges and other penalties associated with surrender which are not disclosed in accordance with California law;

18
19
20

- Jackson National deferred annuities include undisclosed surrender penalties and charges such as a bias built into so-called market value adjustment provisions; and

21
22
23
24

- JNL fails to disclose the rates used to determine annuity payments under the JNL deferred annuities and fails to disclose that these rates are far lower than the rates paid on single premium immediate annuities otherwise available in the marketplace.

25
26
27
28

- 12 -

1

2

3

**Defendant Fails to Comply with Statutory Requirements Concerning the Sale of Deferred Annuities to Senior Citizens and Disclosure of Surrender Periods and All Penalties Associated with Surrender**

4

5

6

7

8

9

10

32.    California's legislature recognizes that senior citizens need additional protections relating to the sale of deferred annuities, due to the complexity, lack of flexibility and inherent illiquidity of these financial products, coupled with the diminishing capacities of the elderly.  These provisions (codified at Cal. Ins. Code §785 *et seq.*) impose a duty of honesty, good faith and fair dealing for insurers when selling deferred annuity products to senior citizens, prohibit "churning",[2] replacement and similar sales practices and dictate strict disclosure requirements.

11

12

13

14

15

16

33.    Because deferred annuities are complex long-term illiquid products and their features are often misunderstood by customers, particularly seniors, California Insurance Code §§ 10127.10 and 10127.13, require insurance companies to comply with strict disclosure requirements regarding the sale of deferred annuities to seniors, including  mandatory disclosures concerning surrender provisions and all associated penalties or charges.

17

18

19

34.    Cal. Ins. Code §10127.10 applies to annuity contracts sold in California on or after July 1, 2004, to individuals ages 60 years and older on the date of purchase.[3]  Cal. Ins. Code §10127.10(c), provides:

20

21

22

Every individual life insurance policy and every individual annuity contract, other than variable contracts and modified guaranteed contracts, subject to this section, that is delivered or issued for delivery in this state shall have the following notice either printed on the cover page or policy jacket in 12-point

23

24

25

26

[2]    Churning describes the use of deceptive sales practices to deplete the accumulated cash value from an existing life insurance policy or annuity (either by its surrender or in the case of a life insurance policy, borrowing against the policy's cash value) and to apply that money to purchase a new insurance policy or annuity.

27

[3]    Cal. Ins. Code §10127.10(g) defines senior citizen as any individual who is 60 years of age or older on the date of purchase of the policy.

28

1  bold print with one inch of space on all sides or printed on a sticker that is
2  affixed to the cover page or policy jacket:

3  "IMPORTANT
4  YOU HAVE PURCHASED A LIFE INSURANCE POLICY OR
   ANNUITY CONTRACT. CAREFULLY REVIEW IT FOR
5  LIMITATIONS. THIS POLICY MAY BE RETURNED WITHIN 30
   DAYS FROM THE DATE YOU RECEIVED IT FOR A FULL
6  REFUND BY RETURNING IT TO THE INSURANCE COMPANY
7  OR AGENT WHO SOLD YOU THIS POLICY. AFTER 30 DAYS,
   CANCELLATION MAY RESULT IN A SUBSTANTIAL PENALTY,
8  KNOWN AS A SURRENDER CHARGE."

9

10  The phrase "after 30 days, cancellation may result in a substantial penalty,
    known as a surrender charge" may be deleted if the policy does not contain
11  those charges or penalties.

12     35.     Similarly, with respect to mandatory disclosure of surrender charges and

13  all associated penalties on annuity products, Cal. Ins. Code §10127.13, provides:

14     All individual life insurance policies and individual annuity contracts for
15     senior citizens that contain a surrender charge period shall either disclose the
       surrender period and all associated penalties in 12-point bold print on the
16     cover sheet of the policy or disclose the location of the surrender
17     information in bold 12-point print on the cover page of the policy, or printed
       on a sticker that is affixed to the cover page or to the policy jacket. The
18     notice required by this section may appear on a cover sheet that also contains
19     the disclosure required by subdivision (d) of Section 10127.10.

20     36.     Defendant's deferred annuities fail to comply with these mandatory

21  statutory disclosure requirements by, among other things, failing to adhere to the

22  required language and by failing to disclose the surrender period and all associated

23  penalties on the cover sheet of the policy or the location of the surrender information

24  on the cover page of the policy or the policy jacket. Defendant's deferred annuity

25  contracts obscure and hide surrender and associated penalty provisions by, *inter alia*,

26  the use of deceptive and misleading headings, indecipherable formulas, confusing

27  verbiage, inconsistent and ambiguous definitions, and "chain" provisions requiring the

28

- 14 -

1 | reader to refer from one provision to another provision in an effort to conceal these
2 | penalties.

3      37.    Defendant's deferred annuity contracts do not disclose the surrender
4 | period and all associated penalties on the cover page nor do they disclose the location
5 | of the surrender information on the cover page as required by Cal. Ins. Code
6 | §10127.13. Rather than complying with Cal. Ins. Code §10127.13, Defendant
7 | attaches non-compliant cover pages to its deferred annuities and, rather than
8 | disclosing the location of all associated penalties on the cover page, the annuities refer
9 | consumers without providing a corresponding page number to a location in the
10 | contract containing incomplete, confusing and inaccurate information concerning the
11 | surrender period and associated penalties. Rather than setting forth the surrender
12 | period and all associated penalties on the cover page or the location indicated on the
13 | cover page, the applicable penalties are instead strewn throughout the contracts in a
14 | maze of defined terms and disparate contract provisions.

15      38.    In addition, certain products have a supplemental market value
16 | adjustment ("MVA") or excess interest adjustment ("EIA") factor that further
17 | penalizes policyholders upon full surrender or partial surrender of funds over penalty-
18 | free amount. The indecipherable MVA/EIA formula also contains an additional
19 | hidden penalty or company "bias" that always acts as an undisclosed additional
20 | surrender penalty. In addition to the unfair and deceptive nature of these additional
21 | penalties associated with surrender, Defendant fails to comply with Cal. Ins. Code
22 | §10127.13 statutory disclosure requirements regarding the MVA and its bias. As an
23 | example, the following chart compares the surrender charge penalties set forth in
24 | Plaintiff Hemen's Bonus Max Two annuity with the actual effective surrender charge
25 | percentages once the undisclosed bias is taken into account:

26
27
28

- 15 -

1

2

3

4

5

| Number of Years Since Premium Payment Was Received | Surrender Charge Percentage Described in Annuities | Actual Penalty Percentage |
|---|---|---|
| Less than 1 | 9.00% | **13.26%** |
| Equal to 1 but less than 2 | 8.00% | **11.80%** |
| Equal to 2 but less than 3 | 7.00% | **10.33%** |
| Equal to 3 but less than 4 | 6.00% | **8.86%** |
| Equal to 4 but less than 5 | 5.00% | **7.39%** |
| Equal to 5 but less than 6 | 4.00% | **5.92%** |
| Equal to 6 but less than 7 | 3.00% | **4.44%** |
| Equal to 7 but less than 8 | 2.00% | **2.96%** |
| Equal to 8 but less than 9 | 1.00% | **1.48%** |
| Equal to 9 and later | 0% | **0%** |

6

7

8

9

10

11

12 **Large Undisclosed Agent Commissions Materially Impact Policy Investment Values**

13

14       39.    Jackson National systematically misrepresents and fails to disclose the

15 high agent commissions paid to Agents on the sale of its deferred annuity products

16 that adversely affect policy investment values and performance. Undisclosed Agent

17 commissions typically range from 8-10% or greater and are secretly included as a

18 product cost or expense. By way of example, an Agent who sells a $100,000.00

19 policy to a senior citizen, pockets $8,000-10,000 on the transaction. This commission

20 cost is built into the product pricing and recouped by the company through

21 undisclosed actuarial and accounting manipulations, lengthy surrender periods,

22 spreads and charges that adversely impact the performance of the annuity and reduce

23 the value of the funds invested. As a generally corollary in annuity product design,

24 the larger the commission requires a longer surrender period periods and higher

25 surrender charges. Defendant does not disclose the existence, amount or effect of the

26 large Agent commissions on policy values. The undisclosed Agent commissions are

27 higher than other investment products with equal or lesser risk and have a material

28

Class Action Complaint

1 effect on policy values and performance that must be disclosed in order for consumers
2 to make an informed decision whether to purchase Defendant's annuities.

3     40.    Deferred annuity purchasers effectively start off in the hole by virtue of
4 this immediate and undisclosed reduction in investment values as a result of the Agent
5 commission. By way of example, a purchaser of a deferred annuity product with an
6 initial premium of $100,000 and a 9 year surrender period and beginning 9%
7 surrender charge, the amount available for investment is only approximately $91,000
8 on day one of the contract. Apart from the deceptive and unfair nature of the
9 undisclosed agent commission and material impact on product performance, claims of
10 safety of principal and no risk of loss are unfair and misleading due to the undisclosed
11 commission and surrender penalty.

12           **Misleading and Illusory Teaser Interest Rate Bonuses**

13     41.    Jackson National deceptively uses an illusory first year initial teaser rate
14 "bonus" as a marketing tool to promote the sale of deferred annuities. Many Jackson
15 National deferred annuities are marketed and sold with a purported first year initial
16 interest rate bonus which is designed to entice customer purchases, gain competitive
17 advantage and create a false sense of benefit, policy enhancement or a boost to
18 accumulated values. However, the bonus interest is effectively treated as a loan to the
19 policyholder and recovered by the Company through lowered renewal crediting rates
20 and manipulations during the lengthy surrender period rendering the bonus misleading
21 and illusory.

22     42.    Defendant employs artificially high first year teaser interest rate bonuses
23 as a deceptive marketing tool promising competitive investment returns that will not
24 be delivered to class members. Defendant systematically represents that their deferred
25 annuities pay competitive rates and investment returns comparable to or better than
26 alternative investments. However, Defendant fails to disclose that these high initial
27 rates are unsustainable and that the Company will reduce the rates paid on annuities in
28

- 17 -

1  future years, thereby diminishing the effective rate of return on the deferred annuities
2  to levels far lower than the returns on other readily available alternative low cost
3  investment products. Defendant issues deferred annuities knowing that the initial
4  rates will be lowered in future years for reasons unrelated to prevailing interest rates
5  or the performance of the equity market indices. As such, initial teaser rate bonuses
6  are illusory and deceptively marketed.

7       43.   Defendant's deferred annuities do not disclose that, over time, Defendant
8  not only recoups the bonus through credited rates lower than on non-bonus products,
9  but that Defendant also exacts higher and longer surrender penalties on bonus
10 products and continues to collect a higher spread over the duration of the contract so
11 that purchasers of bonus products over the long term fare worse than those who
12 purchase non-bonus products.

13      44.   The use the artificially high teaser crediting rates and bonuses is simply a
14 sales tactic to lure in purchasers and gain competitive advantage and market share
15 while the Defendant knows the so-called bonus is illusory.

16      45.   In addition to the material facts above, defendant either fails to disclose
17 altogether or inadequately discloses and obscures that:

18          (a)   Jackson National's deferred annuities carry front-end and/or back end
19 loads resulting from undisclosed commissions, teaser bonus rates and unduly steep
20 early surrender charges;

21          (b)   Jackson National pays commissions to its Agents that greatly exceed
22 commissions paid on mutual funds or more liquid and higher-yielding investments;
23 Jackson National recoups these exorbitant commission costs from Class Members
24 through undisclosed actuarial and accounting manipulations that adversely impact the
25 performance of the annuities;

26          (c)   The effective cost of owning a Jackson National deferred annuity is
27
28

- 18 -
Class Action Complaint

far higher than the costs associated with readily available alternative investments. Because Jackson National does not disclose the true effective cost of owning an Jackson National deferred annuity that is analogous to the fully disclosed annual expense ratios of a mutual fund or the annual expenses of a variable annuity, Class Members are unable to understand the risks, costs and minimal benefits of the Jackson National deferred annuities;

(d) Jackson National deferred annuities fail to disclose any meaningful information concerning the annutization rate that will apply if the owner actually annuitizes the contract or that the rates declared by Jackson National are far lower than the rates paid on single premium immediate annuities otherwise available in the marketplace;

(e) Jackson National deferred annuities fail to adequately disclose that surrender penalties may apply, not only when the owner elects a full or partial surrender, but also when the owner elects an annuitization option other than the unfavorable life contingent or payments spread over a ten year period (during which Jackson National will continue to pocket the undisclosed spread for its own profit);

(f) Jackson National pays purchasers of equity-indexed annuities only a fraction of the individual gains in the indexed markets. Jackson National fails to meaningfully disclose the manner in which the inadequately disclosed caps and

1 index margins interact with changes in the market indices to determine the actual
2 returns to Class Members;

3
4     (g)    Jackson National retains discretion over the annuity owner's
5 earnings, which is inadequately disclosed or concealed by indecipherable formulas
6 buried in the annuity contract;

7
8     (h)    Jackson National conceals the true, costs, expenses, fees and loads
9 through indecipherable product design and mechanics; and

10     (i) Jackson National annuity policies fail to properly explain the
11
12 calculation of index credits and fail to explain that the annuitant's investment
13 might not grow in the value in any given year.

14     46.    The    above    material    omissions,    inadequate    disclosures,
15 misrepresentations, unfair and illegal sales practices concerning Defendant's sale of
16 deferred annuities to senior citizens violate California's unfair competition and
17 financial elder abuse laws.

18
## PLAINTIFFS' TRANSACTIONS

19
### Maxine Derry

20     47.    Plaintiff Maxine Derry, a resident of Garden Grove, California, at nearly
21 70 years old, following an August 2005 meeting with JNL appointed agent Frank
22 Mercuri ("Mercuri"), a "Chartered Senior Financial Planner", was sold and JNL
23 issued two JNL Elite 90 (MCI) fixed indexed deferred annuity policies with combined
24 initial premiums totaling approximately $74,000.00 (Policy Nos. 007126366A and
25 007126367A). The Elite 90 (MCI) policy does not disclose the 8-9% agent
26 commission deceptively built into the policy contract and paid to agent Mercuri. The
27 Elite 90 (MCI) policy imposes substantial surrender penalties for partial or full
28

1 surrenders prior to expiration of a 12 year holding term. The Elite 90 (MCI) policy
2 sold to Plaintiff Derry does not comply with Cal. Ins. Code §10127.10 and §10127.13.
3 As a result, Plaintiff Derry was harmed by Defendant's unfair and illegal business
4 practices.

5 **Russell Hemen**

6 48. Plaintiff Russell Hemen, a resident of Riverside, California, at age 73,
7 was sold two Jackson National deferred annuity products by Defendant's appointed
8 agent Maartin J. Rossouw ("Rossouw"). Following a March 2006 meeting with Mr.
9 Rossouw, Plaintiff Hemen was sold and Defendant subsequently issued a Jackson
10 National Bonus Max Two fixed deferred annuity (Policy No. 1001819050) on April
11 12, 2006 with an initial premium of $100,316.93. The Bonus Max Two policy does
12 not disclose the 8% agent commission deceptively built into the policy contract and
13 paid to agent Rossouw. The Bonus Max Two policy contains a 9 year surrender
14 period beginning at 9%, thereafter decreasing 1% annually during the 9 year period, as
15 well as an additional punitive market value adjustment feature applied upon surrender
16 within the 9 year period. The Bonus Max Two policy sold to Plaintiff Hemen does
17 not comply with Cal. Ins. Code §10127.10 and §10127.13. The Bonus Max Two
18 policy also contains an illusory first year bonus feature and an income maturity date,
19 that is, the time in which income option payments are scheduled to begin of April 12,
20 2023, when Mr. Hemen would be 90 years old.

21 49. At about the same time Mr. Hemen was sold the Bonus Max Two, he was
22 also sold and JNL subsequently issued an Elite Annual Reset fixed indexed deferred
23 annuity (Policy No. 1001819190) on March 29, 2006 with an initial premium of
24 $76,000.00. The Elite Annual Reset policy does not disclose the 9% agent
25 commission deceptively built into the policy contract and paid to agent Rossouw. The
26 Elite Annual Reset policy contains a 12 year surrender period beginning at 10%,
27 thereafter decreasing approximately1.0% annually during the 12 year period. The Elite
28 Annual Reset policy sold to Plaintiff Hemen does not comply with Cal. Ins. Code

- 21 -

1 §10127.10 and §10127.13. The Elite Annual Reset policy also contains an income
2 maturity date, that is, the time in which income option payments are scheduled to
3 begin of April 12, 2023, when Mr. Hemen would be 90 years old. As a result,
4 Plaintiff Hemen was harmed by Defendant's unfair and illegal business practices.

5    50.    Defendant and its Agents used Jackson National materials to effectuate
6 the sale of the Jackson National deferred annuities to Plaintiffs, including but not
7 limited to Jackson National policy forms, consumer brochures, agent guides and
8 handbooks, agent training manuals, newsletters, mailings, and other communications
9 and advertisements. The written materials described above, which were prepared,
10 provided, approved and/or disseminated by Defendant, misrepresented or omitted
11 material facts as described throughout this Complaint.

12                        **CLASS ACTION ALLEGATIONS**

13    51.    Plaintiffs bring this action individually and on behalf of all similarly
14 situated persons as the Court may determine to be appropriate for class certification
15 treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiffs
16 seek to represent a California class for claims arising under California law.

17    52.    The proposed California Class is defined as follows:

18        All California residents age 60 or older at the time of purchase and within the
19        applicable statute of limitations, who, purchased or surrendered one or more
           Jackson National Life Insurance Company deferred annuity products.
20

21    53.    Excluded from the Class are Defendant Jackson National and its
22 directors, officers, predecessors, successors, affiliates, agents and employees, as well
23 as the immediate family members of such persons.

24    54.    Plaintiffs and the Class seek certification of claims for injunctive relief,
25 restitution, disgorgement or other equitable relief and monetary and exemplary
26 damages under the consumer protection and/or elder abuse statutes of California
27 (including treble recovery pursuant to Cal. Civ. Code §3345).

28

1    55.    All class members have suffered injury to their property by reason of
2  Defendant's unlawful course of conduct in that they paid for an insurance policy in
3  which material product features were inadequately disclosed or omitted. Senior
4  citizens were also damaged through deceptive sales practices and inappropriate sales
5  given their age and that they have or could suffer surrender penalties as well as other
6  lost money or property.

7    56.    The Class is reasonably estimated to be in the thousands or tens of
8  thousands and is thus so numerous that joinder of all its members is impracticable.
9  The precise number of class members and their addresses are unknown to Plaintiffs,
10  but can be ascertained through Defendant's records. Class Members may be notified
11  of the pendency of this action by mailing, publication or other notice.

12    57.    There is a well-defined community of interest in the relevant questions of
13  law and fact affecting putative senior citizen Class members concerning violations of
14  California consumer protection and elder abuse statutes.

15    58.    Common questions of law and fact predominate over any individual
16  questions affecting Class members, including, but not limited to, the following:

17    • Whether Defendant committed unfair and/or unlawful business practices in
18      violation of California Business and Professions Code §17200 in the
19      marketing, solicitation, sale and issuance of deferred annuities to Plaintiffs
20      and the Class;

21    • Whether Defendant marketed and sold deferred annuity products without
22      fully disclosing or omitting material product costs, features and other
23      attributes;

24    • Whether Defendant misrepresented features and other attributes of its
25      deferred annuity products;

26    • Whether Defendant failed to comply with California statutory senior citizen
27      disclosure requirements, including failing to comply with Cal. Ins. Code
28      §§10127. 10 and 10127.13;

- 23 -

1     • Whether Defendant breached its duties and obligation of good faith to
2         Plaintiffs and the Class;

3     • Whether Defendant has been unjustly enriched at the expense of the Class;

4     • Whether the Class is entitled to restitution, disgorgement of ill-gotten gains,
5         injunctive, declaratory and/or other equitable relief;

6     • Whether Defendant committed financial elder abuse as defined in California
7         Welfare and Institutions Code §15600 *et seq.*;

8     • Whether Plaintiffs and the Class are entitled to treble damages and penalties
9         under Civil Code §3345; Bus. & Prof. Code §§ 6153, 6175.4, 6175.5,
10        17206.1; and Ins. Code §789.

11     59.   With respect to each putative class, the claims of Plaintiffs and the other
12 class members have a common origin and share a common basis.  The claims
13 originate from the same illegal, fraudulent conspiracy on the part of Defendant and its
14 acts in furtherance thereof, as well as the conduct of its co-conspirators.

15     60.   With respect to each putative class, Plaintiffs' claims are typical of those
16 of the absent class members.  If brought and prosecuted individually, the claims of
17 each class member would require proof of many of the same material and substantive
18 facts, rely upon the same remedial theories and seek the same relief.

19     61.   Plaintiffs will fairly and adequately protect the interests of the classes and
20 have no interests adverse to or that directly and irrevocably conflict with the interests
21 of other class members.  Plaintiffs are willing and prepared to serve the Court and the
22 putative classes in a representative capacity with all of the obligations and duties
23 material thereto.

24     62.   Plaintiffs have retained the services of counsel who are experienced in
25 complex class action litigation, and in particular class actions involving insurance
26 matters.  Plaintiffs' counsel will adequately prosecute this action, and will otherwise
27 assert, protect and fairly and adequately represent Plaintiffs and all absent class
28 members.

Class Action Complaint

1    63.    Class certification is appropriate under F.R.C. P. 23(b)(1), in that the
2  prosecution of separate actions by individual class members would create a risk of
3  inconsistent or varying adjudications, which would establish incompatible standards
4  of conduct for the parties opposing the classes.  Such incompatible standards of
5  conduct and varying adjudications on the same essential facts, proof and legal theories
6  would also create and allow the existence of inconsistent and incompatible rights
7  within the classes.

8    64.    Class certification is appropriate under F.R.C.P. 23(b)(2), in that
9  Defendant has  acted or refused to act on grounds generally applicable to each class,
10  making final declaratory, injunctive or other relief appropriate.

11    65.    Class certification is appropriate under F.R.C.P. 23(b)(3), in that common
12  questions of law and fact predominate over any questions affecting only individual
13  class members.

14    66.    Moreover, a class action is superior to other methods for the fair and
15  efficient adjudication of the controversies raised in this Complaint because:

16          (a)    individual claims by the class members would be impracticable as
17  the costs of pursuit would far exceed what any one class member has at stake;

18          (b)    little individual litigation has been commenced over the
19  controversies alleged in this Complaint, and individual class members are unlikely to
20  have an interest in separately prosecuting and controlling individual actions;

21          (c)    the concentration of litigation of these claims in one forum will
22  achieve efficiency and promote judicial economy; and

23          (d)    the proposed class action is manageable.

24                    **DISCOVERY RULE AND EQUITABLE TOLLING**

25    67.    Plaintiffs and other Class members did not know and could not
26  reasonably have known through reasonable diligence, of Defendant's illegal, unfair
27  and deceptive business practices and could not have reasonably discovered the

28

- 25 -

1 omissions or non-disclosures of Defendant's representations until shortly before the
2 filing of this Complaint.

3    68.    To this day, Defendant continues to omit or fail to fully disclose all
4 material facts and risks associated with the deferred annuity products from the Class
5 and public alike. Throughout this time period, Defendant fails to release or provide
6 this material information in a way that Plaintiffs and/or Class members could have
7 discovered their illegal, unfair and deceptive business practices. Although the initial
8 decisions to engage in these practices were made some time ago, Defendant has
9 continued with its illegal, unfair and deceptive business practices.

10    69.    Defendant has uniformly trained its agents and other representatives to
11 omit or not to disclose the material facts and risks associated with the deferred annuity
12 products described herein. Defendant did not disclose these material facts in any of its
13 policies or sales and marketing materials provided to Plaintiffs and the Class.

14    70.    As a result of the foregoing, Plaintiffs and the Class could not reasonably
15 discover the deceptive and anti-competitive practices and did not do so until recently.
16 For these reasons alleged above, the vast majority of Class members still do not know
17 that they have been and continue to be injured by Defendant's conduct.

18    71.    Defendant's conduct is continuing in nature. There is a substantial nexus
19 between the current illegal, unfair and deceptive conduct and the misconduct prior to
20 that time. The acts involve the same type of illicit practices and are recurring,
21 continuous events.

22    72.    The statute of limitation applicable to any claims that Plaintiffs or other
23 Class members have brought or could bring as a result of the conduct alleged herein
24 has been tolled as a result, since Plaintiffs and the Class did not and could not have
25 discovered their causes of action until recently, thereby tolling any applicable statute
26 of limitations.

27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT I**
**Violation of California Business & Professions Code §§17200 *et seq*.**
**(Against Defendant)**

73.   Plaintiffs and the Class repeat and reallege all allegations contained in the Complaint as if set forth separately in this Cause of Action.

74.   California Business and Professions §17200 prohibits any "unlawful . . . business act or practice." Defendants has violated §17200's prohibition against engaging in an unlawful act or practice by, *inter alia*, the following:

(a)   by omitting or failing to provide full, adequate disclosure of all material facts and risks associated with the deferred annuity products, including but not limited to the risks involved, surrender charges, undisclosed commissions and other consequences as set forth herein, Defendant has violated Cal. Ins. Code §§330-334, 762, 780, 781, 10509, *et seq*.;

(b)   by failing to provide full or adequate disclosure that the deferred annuity sold involves investment risk including the potential that principal may be lost and the product may decline in value, Defendant has violated Cal. Ins. Code §§761-762;

(c)   violating Cal. Civ. Code §§1750, *et seq*.

(d)   violating California Welfare and Institutions Code §§15610.30 and 15657 *et seq*. (as alleged in the Second Cause of Action);

(e)   by failing to conduct themselves with persons over the age of 60 in

1 good faith, honesty, and fair dealing, Defendant has violated Cal Ins. Code §§785

2 *et seq.*

3

4     (f)     by issuing or approving materials that were deceptive or misleading

5 about the nature of their sales presentation of deferred annuities or failing to

6 disclose leads, such as bank tellers or sales agents, that generate contact with a

7

8 person over the age of 60, Defendant has violated Ins. Code §§787 *et seq.*

9     (g)     by omitting or failing to provide full, adequate disclosure of all

10 material facts and risks associated with the deferred annuity products to persons

11

12 over the age of 60, including but not omitted to the risks involved, surrender

13 charges, undisclosed commissions and other consequences as set forth herein,

14 Defendant has violated Cal. Ins. Code §§789.8 *et seq.* and §10509, *et seq.*;

15

16     (h)     by failing to provide full or adequate disclosure to a person over the

17 age of 60 that the sale or liquidation of any stock, bond, IRA, certificate of deposit,

18 mutual fund, annuity or other asset to fund the purchase of the deferred annuity

19

20 sold involves tax consequences, early surrender penalties, investment risk, or other

21 costs or penalties and should consult with a legal or financial professional before

22 purchasing, Defendant has violated Cal. Ins. Code §789.8;

23

24     (i)     by failing to provide full and adequate disclosure that the deferred

25 annuity sold to a person over the age of 60 allows for an examination period of 30

26 days (at which time the applicant may return/cancel the contract), Defendant has

27

28 violated Cal. Ins. Code § 10127.10; and

1   (j)   by failing to provide full and adequate disclosure of information
2   concerning a deferred annuity's surrender charge period and penalties, Defendant
3   has violated Cal. Ins. Code §10127.13.
4

5   75.   Plaintiffs and the Class reserve the right to allege other violations of law
6   which constitute other unlawful business acts or practices. Such conduct is ongoing
7   and continues to this day.

8   76.   California Business and professions Code §17200 prohibits any "unfair ..
9   .business act or practice." As detailed in the proceeding paragraphs, Defendant
10  engages in a systematic scheme to sell deferred annuities to Plaintiffs and the Class, in
11  violation of state and federal law and the fundamental policies delineated in statutory
12  provisions. Defendant gained the trust of Plaintiffs and the Class, had access to their
13  financial information and induced them into purchasing deferred annuities- omitting
14  or without disclosing all material facts and risks associated with the deferred annuity
15  products. As a result, Defendant engages in unfair business practices prohibited by
16  California Business and Professions Code §17200, *et seq*.

17  77.   California Business and Professions Code §17200 prohibits any
18  deceptive business practice likely to deceive the public. As detailed in the preceding
19  paragraphs, Defendant's conduct was likely to deceive Plaintiffs, the Class and the
20  public by, *inter alia*, omitting or failing to disclose all material facts and risks
21  associated with the deferred annuity products, including, but not limited to the
22  disadvantages of purchasing a deferred annuity such as their steep surrender charges
23  and lengthy maturation periods.

24  78.   Moreover, Defendant omitted information about the disadvantages of
25  owning a deferred annuity, as well as information about the lack of access Plaintiffs
26  and the Class would have to their annuity investments. Defendant also failed to
27  disclosed rate of return was, in actuality, a "teaser rate" in effect only for the first
28  month and that the rate of return would dramatically reduce after the first month;

- 29 -

1  and/or that the so-called "bonus" features used by Defendant to lure elderly purchasers
2  are rendered illusory by indecipherable forfeiture and penalty provisions and, in fact,
3  *acted as a financial burden*, rather than a valuable benefit.

4      79.    Defendant aided and abetted its co-conspirators in accomplishing the
5  wrongful acts.  In doing so, Defendant acted with an awareness of their wrongdoing
6  and realized that its conduct would substantially assist the accomplishment of the
7  wrongful conduct.

8      80.    As a result of Defendant's practice, Plaintiffs and the Class have suffered
9  injury-in-fact, including but not limited to, incurring financial losses, including access
10  to needed funds, unnecessary and concealed fees and penalties, undisclosed
11  commissions, charges (including surrender charges) and penalties that Plaintiffs and
12  Class Members would not have otherwise incurred.

13      81.    Unless Defendant in enjoined from continuing to engage in the unlawful,
14  deceptive and unfair business practices described above, members of the general
15  public residing within the United states, including California, will continue to be
16  damaged.

17      82.    Pursuant to California Business and Professions Code §17203, Plaintiffs
18  seek an order requiring Defendant to immediately cease such acts of unlawful and
19  deceptive business practices and requiring them to return the full amount of money
20  improperly collected-including, but not limited to, commissions and profits form the
21  sale of annuities, income derived from penalties and fees-to all those who have paid
22  them-plus interest and attorneys' fees.

23              **COUNT II**
24  **Financial Elder Abuse, California Welfare & Institutions Code §15600 *et seq*.**
       **(Against Defendant)**
25
26      83.    Plaintiffs and the Class repeat and reallege all allegations contained in the
27  Complaint as if set forth separately in this Cause of Action.
28

84.     Defendant's conduct constitutes financial abuse Under California Welfare and Institutions Code §15657.5 *et seq.* as defined in California Welfare and Institutions Code §15610.30.[4]  Section 15610.30(a) provides in relevant part:

(a) "Financial abuse" of an elder or dependant adult occurs when a person or entity does any of the following:

(i)     Takes, secrets, appropriates, or retains real or personal property of an elder or dependant adult to a wrongful use or with intent to defraud, or both.

(ii)    Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependant adult to a wrongful use or with intent to defraud, or both.

85.     At all relevant times, Defendant took and/or assisted in the taking of property from Plaintiffs and the Class (who are all 65 or older) for their own wrongful use. Plaintiffs and other senior members of the Class trusted and relied on Defendant.

86.     Defendant induced Plaintiffs and other senior members of the Class into purchasing deferred annuities.

87.     In doing so, Defendant acted with an awesome of its wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct.

_____

[4]     Cal. Welf. Inst. Code §15610.27 defines elder as any person residing in California age 65 or older.

1    88.    Defendant aided and abetted its co-conspirators in accomplishing the

2    wrongful acts. In doing so, defendant acted with awareness of its misconduct and

3

4    knew that its conduct would substantially further the wrongful conduct.

5    89.    Defendant's conduct was reckless and/or oppressive within the meaning

6    of California Welfare and Institutions Code §15657.5 *et seq*.

7

8    90.    Under California Welfare and Institutions Code §15657.5 *et seq*.,

9    Defendants are liable for reasonable attorneys' fees and costs for investigating and

10   litigating this claim.

11

12   91.    Under California Civil Code §3294 and California Welfare and

13   Institutions Code §15657.05(a), Defendant is liable for punitive damages.

14   92.    Under California Civil Code §3345, Defendant is liable for treble

15

16   damages and penalties because: (a) Defendant knew or should have known its conduct

17   was directed to a senior citizen; (b) its conduct caused a senior citizen to suffer

18   substantial loss of property set aside for retirement, and assets essential to their health

19

20   and welfare; (c) Plaintiffs and other senior members of the Class are senior citizens

21   who are more vulnerable than others to Defendant's conduct because of their age,

22   impaired understanding, impaired health or restricted mobility and (d) Plaintiffs and

23

24   other senior members of the Class actually suffered substantial physical, emotional

25   and economic damages resulting from Defendant's conduct.

26

27

28

- 32 -

1    93.    Under California Welfare and Institutions Code §15657.5 *et seq.*

2  Defendant is liable to Plaintiffs and the senior members of the Class for their pain and

3

4  suffering.

5                          **PRAYER FOR RELIEF**

6        WHEREFORE, Plaintiffs, on behalf of themselves, the Class, and the

7

8  general public, prays for judgment against Defendant as follows:

9    A.    An order certifying this action as a class action under Rule 23 of the
          Federal Rules of Civil Procedures as set further herein;
10

11   B.    For a temporary, preliminary and permanent order for injunctive relief
          enjoining Defendant from pursuing the practices complained of
12        above;

13

14   C.    For a temporary, preliminary and permanent order for injunctive relief
          requiring Defendant to undertake an immediate public information
15        campaign to inform members of the general public as to their prior
          practices and notifying the members of the proposed Class of the
16        potential for restitutionary relief;

17

18   D.    For an order requiring disgorgement and restitution of Defendant's ill-
          gotten gains and to pay restitution to Plaintiffs, the Class, and the
19        general public all funds acquired by means of any practice declared by
20        this Court to be unlawful, deceptive or unfair;

21   E.    For compensatory, special and general damages according to proof
          and as to the Court deems just and proper;
22

23   F.    Assuming certification of the Class pursuant to Rule 23 of the Federal
          Rules of Civil Procedure, for distribution of any recovered on behalf
24        of the general public, or the Class, via fluid recovery or *cy pres*
25        recovery where necessary to prevent Defendant from retaining any of
          the profits or benefits of their wrongful conduct;
26

27

28

                              - 33 -
                        Class Action Complaint

G. For punitive and exemplary damages under Welf. & Ins. Code §15657(a), Civil Code §1780(a)(4), Civil Code §3294; and as to counts for which they are available under the applicable law in such amount as the Court deems just and proper;

H. For treble damages and penalties under Civil Code §3345; Bus. & Prof. Code §§6153, 6175.4, 6175.5 and 17206.1; and Ins. Code §789; and as to counts for which they are available under the applicable law in such amount as the Court deems just and proper;

I. For double damages under Probate Code §859; and as to counts for which they are available under the applicable law in such amount as the Court deems just and proper;

J. For transfer of the wrongfully obtained monies and/or property under Probate Code §§850-859 *et seq.*;

K. Imposition of a constructive trust, an Order granting recessionary and injunctive relief and/or such other equitable relief, including restitution, disgorgement of ill-gotten profits and an order requiring Defendants to provide corrective notice to Class Members as set forth herein and as the Court deems just and proper;

L. An appropriate claims resolution facility to administer the relief in this case;

M. For reasonable attorneys' fees and costs of investigation and litigation under, among other statutes, C.C.P. §1021.5; Welf. & Inst. Code §§15657.05 *et seq.*, 15657.5 *et seq.*; C.C.P. §2033, *et seq.*; and Civil Code §1780(d) or the common fund doctrine;

N. For costs of lawsuit, pre-judgment, and post-judgment interest; and

O. Such other and further relief as the Court may deem necessary or appropriate.

1       **JURY DEMAND**

2       Plaintiffs and the Class hereby demand a trial by jury.

3   Dated: March 2, 2011                    FINKELSTEIN & KRINSK LLP

4

5
                                            By:
6                                               JEFFREY R. KRINSK

7
                                            JEFFREY R. KRINSK
8                                           jrk@classactionlaw.com
                                            HOWARD D. FINKELSTEIN
9
                                            hdf@classactionlaw.com
10                                          MARK L. KNUTSON
                                            mlk@classactionlaw.com
11
                                            C. MICHAEL PLAVI II
12                                          cmp@classactionlaw.com
                                            501 W. Broadway, Suite 1250
13
                                            San Diego, CA 92101
14                                          Telephone: 619/238-1333
                                            619/238-5425 (fax)
15

16                                          THE EVANS LAW FIRM
                                            INGRID M. EVANS
17                                          ievans@evanslaw.com
                                            One Embarcadero, P.O. Box 2323
18                                          San Francisco, CA 94123-2323
                                            Telephone: 888/503-8267
19                                          888/891-4906 (fax)

20

21                                          BONNETT, FAIRBOURN,
                                            FRIEDMAN & BALINT P.C.
22                                          ANDREW S. FRIEDMAN
                                            afriedman@bffb.com
23                                          PATRICIA SYVERSON
                                            psyverson@bffb.com
24                                          KIMBERLY PAGE
                                            kpage@bffb.com
25                                          2901 N. Central Avenue, Suite 1000
                                            Phoenix, AZ 85012
26                                          Telephone: 602/274-1100
                                            602/274-1199 (fax)

27

28
                                    - 35 -
                            Class Action Complaint

1

2

3

4

5

6

ROBBINS GELLER
RUDMAN & DOWD LLP
THEODORE J. PINTAR
tedp@rgrdlaw.com
STEVEN M. JODLOWSKI
sjodlowski@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

7

8

9

10

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
sbasser@barrack.com
402 West Broadway, Suite 850
San Diego, CA 92101
Telephone: 619/230-0800
619/230-1874 (fax)

11

Attorneys for Plaintiffs and the Putative
Class

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>MAXINE DERRY and RUSSELL HEMEN | DEFENDANTS<br>JACKSON NATIONAL LIFE INSURANCE COMPANY |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>Jeffrey R. Krinsk<br>FINKELSTEIN & KRINSK, LLP<br>501 West Broadway, Suite 1250, San Diego, CA 92101 (619) 238-1333 | Attorneys (If Known)<br><br>Not Known |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:** **JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No    ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of California consumer fraud and financial elder abuse statutes

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | Habeas Corpus | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | IMMIGRATION | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

## SACV11-00343 DOC (RNBx)

**FOR OFFICE USE ONLY:**    Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Maxine Derry- Orange County | Russell Hemen- Riverside County |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| , | Michigan |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | , |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date  3/2/11

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

BY FAX

Name & Address:
Jeffrey R. Krinsk
FINKELSTEN & KRINSK, LLP
501 West Broadway, Suite 1250
San Diego, CA 92101

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| MAXINE DERRY and RUSSELL HEMEN, Individually, and on Behalf of Themselves and All Others Similarly Situated<br>PLAINTIFF(S)<br><br>v.<br><br>JACKSON NATIONAL LIFE INSURANCE COMPANY, a Michigan corporation<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV11-00343 DOC (RNBx)**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): <u>JACKSON NATIONAL LIFE INSURANCE COMPANY</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Jeffrey R. Krinsk</u>, whose address is <u>501 West Broadway, Suite 1250, San Diego, CA 92101</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____MAR - 2 2011____

By: _____ **Barrera**
     Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*