1 FINKELSTEIN & KRINSK LLP
   JEFFREY R. KRINSK (109234)
2 jrk@classactionlaw.com
   MARK L. KNUTSON (131770)
3 mlk@classactionlaw.com
   501 West Broadway, Suite 1250
4 San Diego, CA 92101
   Tel: (619) 238-1333
5 Fax: (619) 238-5425

6 EVANS LAW FIRM, INC.
   INGRID M. EVANS (179094)
7 Ingrid@evanslaw.com
   3053 Fillmore Street, Suite 236
8 San Francisco, CA 94123
   Telephone: 415/441-8669
9 888/891-4906 (fax)

10 Attorneys for Class Plaintiffs
11 [Additional counsel listed on signature page]

12            **UNITED STATES DISTRICT COURT**

13          **NORTHERN DISTRICT OF CALIFORNIA**

14                  **OAKLAND DIVISION**

15 NANCY MEADOWS, as Trustee of the          ) Civil Action No. C 12-1380 CW
   Estate of Maxine Derry, and RUSSEL        )
16 HEMAN, Individually, and on Behalf of     ) CLASS ACTION
   Themselves and All Others Similarly       )
17 Situated,                                  )
                                              )
18                    Plaintiffs,             ) **MEMORANDUM IN SUPPORT OF**
                                              ) **MOTION FOR AN AWARD OF**
19                                            ) **ATTORNEYS' FEES, REIMBURSEMENT**
        vs.                                    ) **OF EXPENSES AND SERVICE AWARDS**
20                                            )
                                              ) Date: April 17, 2014
21 JACKSON NATIONAL LIFE                      ) Time: 2:00 p.m.
   INSURANCE COMPANY, a Michigan             ) Place: Ctrm No. 2
22 corporation,                               ) Judge: Chief Judge Claudia Wilken
                                              )
23                    Defendant.             )
                                              )
24 _____ )

25

26

27

28

1

## **TABLE OF CONTENTS**

2

3  **I.     INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

4
5  **II.    HISTORY OF THE LITIGATION AND SETTLEMENT**. . . . . . . . . . 4

6  1.  Pleading and Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7  2. Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .11

8
9  3. Settlement Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10 **III.  THE SETTLEMENT CONFERS SUBSTANTIAL ECONOMIC
11        BENEFITS TO CLASS MEMBERS NATIONWIDE** . . . . . . . . . . . . 17

12 **IV.   THE COURT SHOULD AWARD THE FULL AMOUNT
13        OF ATTORNEYS' FEES THAT JNL HAS AGREED TO
       PAY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

14
15 A. APPLICABLE LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . .18

16 B. PLAINTIFFS' FEE REQUEST IS REASONABLE UNDER
17    THE LODESTAR METHOD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 1.  Class Counsel's Hourly rates Are Reasonable . . . . . . . . . . . . . . . .20

19 2.  The Number of Hours that Class Counsel Devoted to
20    This Litigation Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

21 3.  The Lodestar Calculation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

22
23 4.  Counsel's Fees Are Reasonable Considering the Time
      and Labor required, the Novelty and Complexity of the
24    Litigation, Counsel's Skill and experience, results
      Obtained and Awards in Similar Cases . . . . . . . . . . . . . . . . . . . . . 25
25
26    a.  Class Counsel Invested an Enormous Amount of
         Time and Resources into This Case . . . . . . . . . . . . . . . . . . . . .26
27

28

b. The Litigation Featured Many Novel and Complex
Legal and Factual Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

c. Class Counsel Are Highly Skilled and experienced in
Large and Complex Class Action Litigation . . . . . . . . . . . . . .27

d. Class counsel Obtained an Outstanding Settlement
result for Class Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

e. The Fees and Expenses Sought here Are Well Below
Those Awarded in Similar Deferred Annuity Actions . . . . . . . .29

5. Plaintiffs' Fee Request is Reasonable in Light of the
Contingent nature of the Fee and Class Counsel's Ongoing
Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

C. PLAINTIFFS' FEE REQUEST IS ALSO IN LINE
WITH THE BENCHMARK PERCENTAGE SET BY
THE NINTH CIRCUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

V.   **CLASS COUNSEL'S EXPENSES ARE REASONABLE AND
NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
OBTAINED ON BEHALF OF THE CLASS** . . . . . . . . . . . . . . . . . . . 34

VI.  **THE COURT SHOULD APPROVE THE SERVICE AWARD
OF $10,000 FOR EACH CLASS REPRESENTATIVE** . . . . . . . . . . 35

VII. **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

1

# TABLE OF AUTHORITIES

2

3 FEDERAL PAGE

4 *Anderson v. Nextel Retail Stores, LLC, No. CV 07-4480-SVW(FFMx)*
   2010 U.S. Dist. LEXIS 71598 (C.D. Cal. June 30, 2010) . . . . . . .19, 20, 22

5
   *Blum v. Stenson*
6     465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 25

7 *Boeing Co. v. Van Gemert*
      444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

8
   *Clark v. Los Angeles*
9     803 F.2d 987 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

10 *Craft v. County of San Bernardino*
      624 F. Supp. 2d 1113 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . .32

11
   *Crommie v. Pub. Utils. Comm'n,*
12    840 F. Supp. 719 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

13 *Fleury v. Richemont N. Am. Inc.*
      No. C-05-4525 EMC, 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) . . . . 19

14
   *Gates v. Deukmejian*
15    987 F.2d 1392 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 25

16 *Hanlon v. Chrysler Corp.*
      150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

17
   *Harris v. Marhoefer*
18    24 F.3d 16, 19 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

19 *Hensley v. Eckerhart*
      461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

20
   *Hopson v. Hanesbrands Inc.*
21    No. CV-08-0844 EDL, 2009 WL 928133(N.D. Cal. Apr. 3, 2009) . . . . . 31

22 *Housing Rights Ctr. v. Sterling*
      No. CV 03-859 DSF, 2005 WL 3320738 (C.D. Cal. Nov. 1, 2005) . . . . 22

23 *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*
      263 F.R.D. 226 (E.D. Pa. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29, 36
24

25 *In re Equity Funding Corp. Sec. Litig.*
      438 F. Supp. 1303 (C.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

26 *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
      55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31
27

28

*In re Ins. Brokerage Antitrust Litig.*
  579 F.3d 241 (D. N.J. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Ins. Brokerage Antitrust Litig.*
  No. 04-5184 GEB, 2007 WL 1652303 (D. N.J. June 5, 2007) . . . . . . . . . .36

*In re Heritage Bond Litig. v. U.S. Trust Co. of Tex.*
  *N.A.*, No. 02-ML-1475-DT (RCx), 2005 WL 1594389
  (C.D. Cal. June 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*
  106 F. Supp. 2d 721 (D. N.J. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Jordan v. Multnomah Cnty.
  815 F.2d 1258 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

Kerr v. Screen Extras Guild
  526 F.2d 67 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 25, 27

*Lingenfelter v. Astrue*
  No. SA CV 03-00264-VBK, 2009 WL 2900286
  (C.D. Cal. Sept. 3, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Manners v. Am. Gen'l Life Ins. Co.*
  No. 3-98-0266, 1999 WL 33581944 (D. Tenn. Aug. 11, 1999) . . . . . . . . 30

*Masters v. Wilhelmina Model Agency, Inc.*
  473 F.3d 423 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Mathis v. Spears
  857 F.2d 749 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*McPhail v. First Command Fin. Planning, Inc.*
  No. 05cv179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) . . .32

*Paul, Johnson, Alston & Hunt v. Graulty*
  886 F.2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*People Who Care v. Rockford Bd. of Educ.*
  90 F.3d 1307 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*POM Wonderful, LLC v. Purely Juice, Inc.*
  No. CV 07-2633 CAS (JWJx), 2008 W.L. 4351842
  (C.D. Cal. Sept. 22, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Rodriguez v. West Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Schwartz v. Sec'y of Health & Human Servs.*
  73 F.3d 895 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Six (6) Mexican Workers v. Ariz. Citrus Growers*
  904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Snell v. Allianz Life Ins. Co. of N. Am.*
  No. 97-2784(RLE), 2000 WL 1336640 (D. Minn. Sept. 8, 2000) . . . . . . . 30

*Torrisi v. Tucson Elec. Power*
  8 F.3d 1370 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*United Steelworkers of Am. v. Phelps Dodge Corp.*
  896 F.2d 403 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Van Vranken v. Atl. Richfield Co.*
  901 F.Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .36

*Varacallo v. Mass. Mut. Life Ins. Co.*
  226 F.R.D. 207 (D.N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Waters v. Int'l Precious Metals Corp.*
  190 F.3d 1291 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

*Williams v. MGM-Pathe Commc'ns Co.*
  129 F.3d 1026 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32, 33

*Yamonouchi Pharm. Co. v. Danbury Pharmacal., Inc.*
  51 F.Supp.2d 302 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

*Yurman Designs, Inc. v. PAJ, Inc.*
  125 F.Supp.2d 54 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATUTES

Cal. Bus. & Prof. Code§17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

Cal. Civil Code §1750. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cal. Ins. Code § 10127. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Cal. Ins. Code § 10127.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6, 14

Cal. Ins. Code §10127.13. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6, 14

Cal. Welf. & Inst. Code§15600. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Welf. & Inst. Code § 15610. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cal. Welf. & Inst. Code §15657. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Fed. R. Civ. P. 23(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

MEMORANDUM IN SUPPORT OF MOTION AN AWARD OF ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS

1    Plaintiffs and Class Representatives Nancy Meadows, as Trustee of the

2    Estate of Maxine Derry, and Russel Heman ("Plaintiffs") respectfully submit this

3

4    memorandum in support of their motion for an award of attorneys' fees,

5    reimbursement of expenses and service awards for their and their counsel's hard

6    work and skill in prosecuting this class action and securing a valuable recovery for

7

8    all members of the settlement class.

9    **I.    INTRODUCTION**

10   The Settlement reached by the parties provides valuable economic relief for

11

12   approximately 40,000 senior citizens who purchased and took delivery of deferred

13   annuity from Jackson National Life Insurance Company ("JNL" or "Defendant")

14   within California. [1] After many years of hard fought litigation, including several

15

16   months of arm-wrangling settlement negotiations, Class Counsel[2] were able to

17   resolve the class-wide claims arising from the sale of JNL financial products to

18   seniors for delivery in this state.

19

20

21

22   [1] As used herein, deferred annuities include JNL's fixed and fixed indexed
     annuities. Settlement Dkt. # 135-1 p. 2.
23

24   [2] Pursuant to the Court's Findings and Order Preliminarily Approving Class
     Settlement, Directing Issuance of Notice to the Class, and Setting of Fairness
     Hearing ("Preliminary Approval Order"), dated November 19, 2013, the Court
25   appointed the following firms as Class Counsel: (a) Finkelstein & Krinsk LLP
     ("F&K"); (b) The Evans Law Firm, Inc. ("ELF"); (c) Bonnett Fairbourn Friedman
26   & Balint ("BFFB"); (d) Robbins Geller Rudman & Dowd LLP ("Robbins Geller");
     and, (e) Barrack Rodos & Bacine LLP ("Barrack Rodos"). [Dkt. # 150 at p. 2].
27

28                                          1

1    Under the terms of the settlement, JNL has agreed to provide substantial

2    economic benefits to the settlement class, the total value of which has been
3
4    estimated by Plaintiffs' actuarial expert at in excess of $ 11.2 million.   *See*

5    Declaration of Terry M. Long, FSA, MAAA, in Support of Final Settlement

6    Approval of Stipulated Settlement ("Long Decl."), ¶ 4.[3]
7

8    For their dogged efforts in achieving this Settlement, Class Counsel hereby

9    seek an award of attorneys' fees and expenses equal to less that 1.187 % of the

10   Class' recovery – an amount that is *not* taxed on the Class itself.  Counsel's efforts
11
12   to date have been without compensation of any kind and the fee has always been

13   wholly contingent upon the result achieved.[4]  Thus, any award of attorneys' fees

14   and expenses will *not* in any way affect the form or amount of the benefits
15
16   available to the Settlement Class. Conversely, any reduction in the fee will not

17   increase benefits to the Settlement Class – it will simply revert to JNL.

18
     Although lodestar multipliers are common and appropriate in large, complex
19
20   class actions such as this, the multiplier sought here is relatively minor. Thus, the

21   fee *and* expense award request of $3,080,000 is comparable to the lodestar and

22   _____

23   [3] Mr. Long summarizes in his declaration that, after thoroughly reviewing and
     analyzing the policyholder data provided by JNL, the settlement would provide a
24   maximum value of $19.8 million, but in his actuarial judgment (and based on
     JNL's data), the likely realizable value was approximately $11.239 million. Long
25   Decl. ¶¶ 4, 16-24.

26   [4] Settlement and Release Agreement, filed June 21, 2013 ("Agreement"). Dkt.
     #135-1.
27

28                                         2

     _____
     MEMORANDUM IN SUPPORT OF MOTION AN AWARD OF ATTORNEY'S FEES,
     REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS

expenses actually incurred in the case. Moreover, if the requested net (of costs) attorney fee award of $3,013,873.70 were computed under a "common fund," percentage of recovery method, it would approximate 26.8% of the expected realizable value of the settlement benefits attributable to the Settlement Class. *See* Long Decl.; Joint Decl., ¶ 53.

Plaintiffs' fee and expense request is certainly fair and reasonable in light of their counsel's hard-work, tenacity, and ultimate success in achieving an outstanding result on behalf of the settlement class. Class Counsel persisted daily in their efforts to advance the litigation despite the substantial risk of non-payment due to the uncertain outcome and the contingent nature of the work. As the Court is aware, Class Counsel faced numerous challenges in prosecuting the action, not the least among them, the skilled and formidable defense by JNL's counsel. And, notably, the requested fee does not include the substantial work that Class Counsel must still shoulder before the litigation is completed, such as claims administration, class member communications, and responding to any associated objection and related appeal – further work benefitting the settlement class that could easily last for years and which will go uncompensated.

Additionally, JNL has agreed to pay a service award of $10,000 to each plaintiff (collectively $20,000) for their time and effort in participating in this case as Class Representatives. As with the requested award for attorneys' fees and

3

expenses, the service award is paid separately and will not affect the amount of relief available to the settlement class.   Plaintiffs have devoted a considerable amount of time and undertook substantial efforts on behalf of the settlement class and should be justly recognized for their efforts.

For the reasons set forth herein, plaintiffs respectfully submit that the requested award for attorneys' fees and expenses and the service awards are reasonable under Ninth Circuit case law and, in light of the excellent result achieved on behalf of the settlement class, should be fully awarded by this Court pursuant to the settlement agreement.

## II.   HISTORY OF THE LITIGATION AND SETTLEMENT

### 1.   Pleadings and Motions

On March 2, 2011, Maxine Derry and Russel Heman filed suit on behalf of themselves and on behalf of other similarly situated Californians (collectively, "Plaintiffs") on a putative class-action basis against JNL in the United States District Court for the Central District of California, captioned *Derry v. Jackson National Life Ins. Co.*, Case No. SACV 11-0343 DOC (RNBx), and assigned to the Hon. David O. Carter ("the Action").   The complaint asserted two counts: (1) JNL's violation of California's Unfair Competition Laws [Cal. Bus. & Prof. Code §§ 17200]; and defendant's independent violation of California's Financial Elder Abuse statute [California Welfare & Institutions Code §15600, *et seq.*].   *See* Joint

4

Declaration of Jeffrey R. Krinsk and Ingrid M. Evans in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and for Approval of Award of Attorneys' Fees, Reimbursement of Expenses and Service Awards. ("Joint Decl."), ¶ 5.

On May 13, 2011, the parties stipulated to Plaintiffs' filing of a first amended complaint in lieu of JNL moving to dismiss Plaintiffs' original complaint. [Dkt. # 17]. On June 3, 2011, Plaintiffs filed their first amended complaint which, again, alleged two counts. [Dkt. # 24]. The first count asserted a violation of the UCL predicated on JNL's alleged non-compliance with: (1) Cal. Ins. Code Sections 10127.10 and 10127.13, because the JNL annuities sold/delivered to California seniors failed to include mandatory cover page disclosures concerning applicable surrender charges and other associated penalties relating to JNL's deferred annuity products; (2) Consumer Legal Remedies Act [Cal. Civil Code §1750, *et seq.*]; and, California Financial Elder Abuse statutes [Cal. Welf. & Inst. Code §§ 15610 and 15657, *et seq.*]. [Dkt. # 24 at pp. 23-24]. The second count in the amended complaint was based on JNL's independent violation of this state's Financial Elder Abuse statutes. [*Id.*, at pp. 24-25]. The amended complaint also alleged that the applicable statute of limitations for these claims had been equitably tolled by operation of the proceedings in *Kennedy v. Jackson National Life Ins.*

5

1  *Co.*, Case No. 07-cv-0371-CW (U.S.D.C. N. Dist. Cal.) ("*Kennedy*"). [*Id.*, at pp.
2  22-23].  Joint Decl., ¶ 6.
3

4  JNL moved to dismiss the amended complaint on the grounds that it failed to
5  state a claim, and that, even if its annuities failed to include the disclosures
6  required California's Insurance laws, the claims were time barred.  [Dkt. # 26].
7  
8  Following full briefing, the matter was taken under submission by Judge Carter.
9  [Dkt. # 34]; Joint Decl., ¶ 7.

10  On August 25, 2011, Plaintiffs filed their motion for class certification.
11  [Dkt. No. 37].  Following full briefing on the motion, but prior to oral argument,
12  
13  Judge Carter granted JNL's motion to dismiss, with leave to amend [Dkt. No. 63].
14  In addition, on October 20, 2011, the Court issued an Order to Show Cause to
15  
16  Plaintiffs as to why their class certification motion should not be denied as moot in
17  light of the granting of JNL's motion to dismiss the first amended complaint.  [Dkt.
18  # 64]; Joint Decl. ¶ 8.
19

20  On October 21, 2011, Plaintiffs filed their second amended class action
21  complaint ("SACAC") [Dkt. # 65].  The SACAC significantly shrunk the scope of
22  Plaintiffs' UCL claim against JNL, and with it, many issues relating to JNL's non-
23  compliance with the statutory annuity disclosure requirements for California
24  seniors (*i.e.*, California Ins. Code §§ 10127.10 and 10127.13).  As a result,
25  Plaintiffs chose to withdraw their motion for class certification.  [Dkt. # 66].  On
26  
27  
28  6

1  November 11, 2011, Judge Carter entered an Order declaring Plaintiffs' class
2  certification motion to be moot, but recognized that Plaintiffs could later seek to
3
4  move for class certification on the claims asserted in the SACAC provided they
5  could establish an exception for an extension of the timing of such a motion under
6
7  the court's local rules. [Dkt. # 70 at p. 2]; Joint Decl., ¶ 9.

8       On November 11, 2011, JNL moved to dismiss the SACAC and to strike its
9  claims for restitution. [Dkt. # 71]. Plaintiffs thereafter timely filed an opposition
10  to JNL's motion to dismiss, but did not contest JNL's motion to strike the
11
12  SACAC's claim for restitution. [Dkt. # 73]. JNL filed its reply on December 5,
13  2011. [Dkt. # 76]. The Court took JNL's motion under submission on December
14  14, 2011. [Dkt. # 78]. However, instead of issuing a ruling on JNL's motion to
15
16  dismiss, on March 12, 2012 the Court, *sua sponte*, ruled that in "the interest of
17  justice" the Action would be transferred to the Hon. Claudia Wilken of the United
18  States District Court for the Northern District of California "to avoid any actual or
19
20  perceived inconsistencies that could arise between rulings made in *Kennedy* and in
21  the present case." [Dkt. # 80]; Joint Decl., ¶ 10.

22       Upon transfer, JNL re-noticed its motion to dismiss and to strike the
23
24  SACAC's restitution claim. [Dkt. # 89]. On June 4, 2012, the Court denied JNL's
25  motion to dismiss, but granted its unopposed motion to strike. [Dkt. # 91; *see also*
26
27  *Derry v. Jackson National Life Ins. Co.*, Case No. 12-cv-01380, 2012 WL 1997234

28                                         7

(N.D. Cal. June 4, 2012)]. On June 18, 2012, JNL filed its Answer to the SACAC. [Dkt. # 92]; Joint Decl., ¶ 11.

At a case management conference held July 18, 2012, the Court set dates pertaining to, *inter alia*, a deadline for the parties to conduct a private settlement mediation, fact discovery cut-off, disclosure of expert witness identities and exchange of expert reports, completion of expert discovery, a hearing on Plaintiffs' renewed motion for class certification, and a hearing on any case-dispositive motions. [Dkt. # 101]; Joint Decl., ¶ 12.

Due to JNL's inordinate delay in producing specimen copies of all of its deferred annuity products sold and delivered to annuitants in California during the Class Period, on September 17, 2012, Plaintiffs filed a motion to extend all dates on the pre-trial schedule by sixty (60) days. [Dkt. # 104]. The following day, Plaintiffs moved to substitute the Estate of Maxine Derry in place of decedent Maxine Derry. [Dkt. # 105]. JNL filed a statement of non-opposition to both of Plaintiffs' motions [Dkt. # 108, 109], and the Court thereafter granted both motions. [Dkt. # 110, 111]; Joint Decl., ¶ 13.

On November 26, 2012, JNL filed its motion for summary judgment against Plaintiffs and its accompanying evidentiary support. [Dkt. # 114, 115]. Plaintiffs' opposition to JNL's summary judgment motion and Plaintiffs' motion for class certification were jointly filed on December 17, 2012. [Dkt. # 118-121]. With the

8

flurry of activity surrounding the summary judgment and class certification motions, additional discovery relating to the same, and the selection of an agreed upon private settlement mediator (Hon. John K. Trotter (Ret.)), and attendant mediation scheduling issues, on January 4, 2013 the parties jointly moved to continue the ADR deadline and summary judgment and class certification hearing dates. [Dkt. # 122]  The Court thereafter granted the parties' motion. [Dkt. # 123]; Joint Decl., ¶ 14.

On January 28, 2013, JNL filed its opposition to Plaintiffs' motion for class certification together with its reply in support of summary judgment. [Dkt. # 124, 125].  Following the filing of JNL's opposition to the class certification motion, Plaintiffs filed their reply brief in support of the same on February 19, 2013, thereby rendering both motions *sub judice*.  [Dkt. # 126]; Joint Decl., ¶ 15.

On March 7, 2013, the parties held their initial settlement mediation before Judge Trotter.  Although the case did not settle, significant progress was made to resolve this Action through a class action settlement, and a further mediation session was held on March 28, 2013.  As a result of increasing gains in reaching a settlement, the parties submitted a joint stipulation to the Court requesting that it continue the summary judgment and class certification hearings to allow the parties the opportunity to conduct a third mediation session.  [Dkt. # 127, 128].  On April 2, 2013, the Court granted the hearing continuance.  [Dkt. # 129].  Additional

9

1  meetings with Judge Trotter eventually enabled the parties to find common ground
2
3  and, as a result, a settlement term sheet was executed by the parties on April 30,
4  2013. [Dkt. # 131]. In response, the Court vacated the class certification and
5  summary judgment hearings. [Dkt. # 132, 133]; Joint Decl., ¶ 16.

6
7  Plaintiffs submitted their motion for preliminary settlement approval on June
8  21, 2013 [Dkt. # 134, 135], which was not opposed by JNL. [Dkt. # 137]. A
9  hearing for preliminary settlement approval was held on August 1, 2013, at which
10
11 the Court raised some concerns about certain terms of the Settlement and proposed
12 class notice, and directed the parties to meet and confer in and attempt to reach an
13 agreement on modifications to the Settlement and its exhibits to ameliorate the
14
15 Court's concerns. [Dkt. # 140]; Joint Decl., ¶ 17.

16 When the Court was informed of an impasse in the parties' efforts to agree
17 on modifications to the settlement and proposed class notice, and the extent of data
18
19 and information that JNL would provide to Plaintiffs' actuarial consultant for
20 settlement valuation purposes, the Court issued an Order directing the parties to
21 either reach an agreement and submit jointly proposed changes to the settlement
22
23 and proposed class notice, or submit their respective versions of these documents
24 by October 14, 2013. [Dkt. # 141]; Joint Decl., ¶ 18.

25 In response to the Court's October 7, 2013 Order, the parties submitted
26
27 separate versions of the proposed modifications to the Settlement and proposed

28

10

MEMORANDUM IN SUPPORT OF MOTION AN AWARD OF ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS

1   class notice.   [Dkt. # 142, 143].  Thereafter, on two (2) separate occasions [Dkt. #
2
3   144, 147] the Court directed the parties to continue to meet and confer on the
4   issues that separated them and submitted supplemental submissions and/or an
5   agreed upon form of class notice.  Finally, on November 12, 2013, the parties
6
7   reach an agreement on the unresolved issues, including the form of class notice.
8   [Dkt. # 148].   On November 19, 2013, the Court preliminarily approved the
9   Settlement.  [Dkt. # 150]; Joint Decl., ¶ 19.
10
            2.      Discovery
11

12       Class Counsel engaged in targeted and extensive discovery in this Action,
13   while also drawing upon the discovery previously obtained in *Kennedy* as it
14   pertained to the deficient disclosures of deferred annuities required for California's
15
16   seniors, to reduce duplicative discovery and its concomitant expense.  Joint Decl.,
17   ¶ 20.
18
        More specifically, as an initial matter Plaintiffs issued a Notice of Rule
19
20   30(b)(6) Deposition Re: Compliance with Cal. Ins. Code §§ 10127, *et seq*., to JNL,
21   on July 13, 2011.  Plaintiffs' Rule 30(b)(6) deposition notice included five subject
22
23   matters pertaining to the development, implementation, and compliance
24   monitoring of the company's deferred annuity disclosures for California seniors,
25   and also encompassed four document requests, including one that sought the
26
27   production of a specimen copy of each of the twenty one (21) deferred annuity
28                                        11

1    products and all versions thereof sold by JNL in California during the relevant
2    period. Concurrent with the issuance of the deposition notice, Class Counsel wrote
3
4    to JNL and demanded its preservation of all electronically stored information
5    ("ESI") and, separately requested JNL's consent to Plaintiffs' usage of any
6    discovery responses, data, documents and other materials previously produced in
7
8    *Kennedy* as being equally applicable and usable in *Derry*.  Plaintiffs subsequently
9    served JNL with separate sets of interrogatories and an additional document
10   request. Joint Decl., ¶ 21.
11
12       On July 27, 2011, Jackson propounded interrogatories and requests for
13   documents, including 29 document requests and 8 interrogatories to each named
14   Plaintiff, and also noticed their deposition.   On August 27, 2011, Plaintiffs
15
16   provided objections and responses to Jackson's interrogatories and document
17   requests.    In response to these JNL discovery requests, Plaintiffs produced
18   approximately 250 pages of documents. And on September 7, 2011, Jackson took
19
20   the depositions of Plaintiff Maxine Derry and her daughter Nancy Meadows.  On
21   September 8, 2011, Jackson took the deposition of Plaintiff Russel Heman.  Joint
22   Decl., ¶ 22.
23
24       On August 25, 2011, JNL responded and objected to Plaintiffs' Rule
25   30(b)(6) deposition notice and appended document request.    However, JNL
26   ultimately produced approximately 704 pages of documents concerning the annuity
27
28                                           12

purchases and related documentation of Plaintiffs Maxine Derry and Russel Heman in response to this discovery request. Defendant objected to the subject matters and production of specimen copies of the twenty-one deferred annuity policies identified in Plaintiffs' Rule 30(b)(6) deposition notice and agreed to provide only the actual policies sold to the Plaintiffs unless and until the class is certified. [*See* Joint Case Management Statement, Dkt. # 100 at p. 8]. Joint Decl., ¶ 23.

As a result on JNL's refusal to produce class discovery, Plaintiffs were required to move for the production of the sought after documents and interrogatory responses from JNL before U.S. Magistrate Judge Maria-Elena James. [Dkt. # 112]. Plaintiffs' motion was granted by Order entered November 12, 2012. [Dkt. No. 113]. Joint Decl., ¶ 24.

Plaintiffs' Rule 30(b)(6) deposition was originally noticed for August 19, 2011 due to the then pending August 25, 2011 motion for class certification deadline. Given the timing of the filing of JNL's motion to dismiss, objections and responses to the discovery request, the then-pending class certification deadlines and the Court's intervening Order dismissing the amended complaint and withdrawal of Plaintiffs' motion for class certification, the Rule 30(b)(6) deposition did not occur. Joint Decl., ¶ 25.

13

1    During the pendency of JNL's motion to dismiss the SACAC, the parties

2    continued to engage in dialogue regarding Plaintiffs' Rule 30(b)(6) deposition

3

4    notice and document requests concerning JNL policy forms and compliance with

5    Cal. Ins. Code §§ 10127.10 and 10127.13.  On April 27, 2012 and May 4, 2012,

6    JNL produced an additional 235 pages of responsive documents.  However, due to

7

8    JNL's inability to produce copies of all deferred annuity contracts sold/delivered in

9    California during the relevant time period, on October 18, 2012, the parties

10   stipulated that the deferred annuity policy form specimens previously produced in

11

12   lieu of producing a corporate designee for a Rule 30(b)(6) deposition would be

13   admissible for all purposes.   In addition, and as a means to short-stream this

14   discovery quandary, Plaintiffs agreed to utilize document and written discovery not

15

16   produced as "confidential" JNL in *Kennedy* in lieu having JNL to reproduce the

17   same in Derry.   This saved invaluable amount of litigation expenses for both

18   parties in this action.  Joint Decl., ¶ 26.

19

20   Throughout the course of this Action, Plaintiffs consulted with regulatory,

21   actuarial, and financial experts to assist in preparation of the litigation and motion

22   practice.  Joint Decl., ¶ 27.

23

24   3.    Settlement Negotiations

25   Beginning in late 2012, the parties initiated settlement discussions as

26   required by the Court's July 18, 2012 case management order.  [Dkt. # 101].  Over

27

28                                     14

the next several months, the parties engaged in arms-length negotiations, including meeting on multiple occasions, participating in several substantive telephone conferences, and exchanging numerous emails and proposals. Counsel for the parties also attended multiple face-to-face meetings (all of which were conducted under the supervision of Judge Trotter), in connection with their continuing negotiations and ultimately worked several hundred hours to reach the terms embodied in the Settlement.  Joint Decl., ¶ 28.

At no time during the negotiations on the Settlement terms were Class Counsel's fees and expenses discussed.   The parties refrained from such a discussion until after all of the material terms of the Settlement (including its Exhibits), had been fully and finally agreed upon.  Joint Decl., ¶ 29.

After the substantive terms of the Settlement were agreed on, Plaintiffs made an attorneys' fee and expense demand on Defendant. This demand for fees and expenses was separate and apart from the relief negotiated for the Class.  Joint Decl., ¶ 30.

Thereafter, the parties participated in a meeting supervised by Judge Trotter regarding the issue of Plaintiffs' attorneys' fees and expenses.   The parties ultimately agreed that JNL would pay (subject to the Court's approval) up to $3,080,000 in attorneys' fees and expenses, separate and apart from the relief

15

1   provided to the Class.   JNL also agreed to pay $10,000 each to the two Class

2   Representatives.  [Dkt. # 135-1, pp. 5-6]; Joint Decl., ¶ 31.

3

4   On June 21, 2013, Plaintiffs filed the Settlement and their memorandum in

5   support of preliminary approval of the Settlement.  [Dkt. # 134, 135].  On August

6   1, 2013, the Court conducted a hearing regarding the preliminary approval of the
7
8   Settlement at which time it raised some concerns regarding the substantive terms

9   of the Settlement and the form and content of the proposed order preliminarily

10  approving the Settlement and proposed class notice, and directed the parties to
11
12  meet and confer on these issues in an attempt to resolve them to the Court's

13  satisfaction.  [Dkt. 140]; Joint Decl., ¶ 32.

14
    After approximately three and one-half months of additional meet and
15
16  confer negotiations between the parties as directed by the Court, they were able

17  resolve all remaining issues and submit a revise form of an order preliminarily

18  approving the Settlement and the proposed class notice.   [Dkt. # 141-148].
19
20  Accordingly, on November 19, 2013, the Court entered its Order preliminarily

21  approving the Settlement, conditionally certified the proposed Class, appointed the

22  named Plaintiff to serve as a Class Representative and Class Counsel, approved the
23
24  substance and form of the proposed class notice, and directed JNL to cause the

25  dissemination of class notice.   [Dkt. # 150]; Joint Decl., ¶ 33.

26

27

28                                              16

1

## III. THE SETTLEMENT CONFERS SUBSTANTIAL ECONOMIC BENEFITS TO CLASS MEMBERS NATIONWIDE

2

3      Under the Agreement, valuable economic relief has been achieved by Class

4  Counsel on behalf of the Settlement Class. The Settlement provides that members

5  of the Settlement Class who choose not to be excluded are eligible to

6
7  *automatically* receive tangible economic benefits in the form of a 22% refund of

8  any surrender charges previously imposed by JNL and an additional 22% reduction

9  in Annuity Surrender Charges imposed on a going forward basis.  Agreement, at ¶

10
11  3(a) and (b).

12      Plaintiffs have retained Terry M. Long, FSA, MAAA, a distinguished

13  actuary from Lewis & Ellis, Inc., with over 35 years of insurance experience, to

14
15  value the settlement relief available to Class Members.[5]  After reviewing the terms

16  of the Agreement and analyzing the Class Member data provided by JNL, Mr.

17  Long has calculated the value the settlement benefits based upon sound and

18
19  conservative actuarial principles.  And that this analysis reveals that the anticipated

20  realizable settlement benefits will, collectively, provide an approximately $11.2

21  million in economic benefits to the settlement class.  *Id.*, ¶ 4.

22

23

24  _____

25  [5] Mr. Long is a Senior Vice President and Principal of Lewis & Ellis, Inc., an actuarial consulting firm, a Fellow of the Society of Actuaries, and a member of

26  the American Academy of Actuaries. *See* Declaration of Terry M. Long, FSA, MAAA in Support of Final Approval of Stipulation of Settlement, filed

27  concurrently ("Long Decl."), ¶¶ 5, 9.

28                                    17

Based on his review of the Class Member data and the application of reasonable actuarial assumptions, Mr. Long calculates that there are 39,839 active deferred annuity contracts within the settlement class.   Long Decl., ¶ 18.  Mr. Long further considered the accumulation value of these contracts, and based on their actual surrender experience, conservatively calculated that Class Members with active deferred annuities will receive approximately $11,239,146 in surrender charge rebates and/or reductions.  Long Decl., ¶¶ 4 and 16-24.

For their hard work, skill and diligence in securing this valuable economic relief for the Settlement Class, Class Counsel should be awarded the full amount of requested attorneys' fees and expenses, as agreed upon by the parties.  Agreement, ¶ 5.  The requested fee and expense award of $3,080,000 is reasonable and fair under both the lodestar and percentage of recovery methods approved by the Ninth Circuit.

## IV.   THE COURT SHOULD AWARD THE FULL AMOUNT OF ATTORNEYS' FEES THAT JNL HAS AGREED TO PAY

### A.   APPLICABLE LEGAL STANDARDS

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The Ninth Circuit has long accepted "two separate methods for determining attorneys' fees, depending on the case," the lodestar and percentage of

18

1  recovery methods. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.

2  1998).

3

4      In common fund cases where the settlement creates a large fund for

5  distribution to the class, a court may assess attorneys' fees as a percentage of the

6  settlement fund. *Id.*; *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480-

7

8  SVW(FFMx), 2010 U.S. Dist. LEXIS 71598, at *4 (C.D. Cal. June 30, 2010)

9  [Lexis citation not available to Westlaw]. In the absence of a common fund and

10  where, as here, the defendant has agreed to pay attorneys' fees separate and apart

11

12  from any relief to the Settlement Class, it is appropriate to determine the fee award

13  using a lodestar analysis. *See Hanlon*, 150 F.3d at 1029; *Fleury v. Richemont N.*

14  *Am. Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *1-3 (N.D. Cal. Aug. 6,

15

16  2008).

17      Under the lodestar method, a reasonable attorneys' fee is determined by

18  multiplying the number of hours reasonably expended by a reasonable hourly rate.

19

20  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The fee amount calculated

21  under the lodestar method is presumptively reasonable. *Anderson*, 2010 U.S. Dist.

22  LEXIS 71598, at *4 (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir.

23

24  1992)).  Here, plaintiffs' fee request of $3,080,000 is significantly less than the

25  actual lodestar and expenses incurred by counsel. Considering the time and labor

26  required to successfully prosecute this matter, the novelty and complexity of the

27

28                                          19

issues, the special skill and experience of counsel, the quality of the representation, the results obtained, and awards in similar cases, the requested award is plainly reasonable and fair. *Clark v. Los Angeles*, 803 F.2d 987, 991 n.3 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)); *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975).

Moreover, the reasonableness of plaintiffs' fee request is confirmed when analyzed under the percentage of recovery method. *Anderson*, 2010 U.S. Dist. LEXIS 71598, at *4. Indeed, the requested award represents less than 0.0018% of the total value of the settlement benefits achieved for the Settlement Class.

B.    PLAINTIFFS' FEE REQUEST IS REASONABLE UNDER THE LODESTAR METHOD

1.    Class Counsel's Hourly Rates Are Reasonable

Under the lodestar method, reasonable hourly rates are determined by the:   prevailing market rates in the relevant community,'" which are the rates a lawyer of comparable skill, experience and reputation could command in the relevant community.

*Anderson*, *supra.*, 2010 U.S. Dist. LEXIS 71598, at *6 (citing *Blum*, 465 U.S. at 895).

The relevant community is that in which the court sits, here the Northern District of California. *Schwartz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). And, an attorney's actual billing rate is presumptively appropriate to use as the lodestar market rate. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate

20

determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "Courts also frequently use survey data in evaluating the reasonableness of attorneys' fees;" *see also Mathis v. Spears*, 857 F.2d 749, 755-56 (9th Cir. 1988)).

Here, Plaintiffs have submitted sworn declarations by their counsel, attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this case.[6]  The hourly rates submitted by Class Counsel reflect their actual billing rates; thus, they are presumptively appropriate. Class Counsel are highly-respected members of the bar with extensive experience in prosecuting high-stakes complex litigation, including consumer class actions. Joint Decl., ¶ 52; *see generally* Co-Counsel Decls., and firm biographies attached as exhibits thereto.  Table 1 sets forth the hourly rates, total hours worked and fee amounts for each of the law firms involved in the prosecution of this action. Class Counsel's rates are appropriate for complex, nationwide litigation and reflect a

---

[6] Declaration of Jeffrey R. Krinsk in Support of Award of Attorney Fees and Reimbursement of Litigation Expenses, filed concurrently ("Krinsk Decl."), ¶¶ 4-6; Declaration of Ingrid M. Evans in Support of Motion for Final Approval of Attorneys' Fees and Costs, filed concurrently ("Evans Decl."), ¶¶ 11-13 (collectively, "Co-Counsel Decls.")

21

high level of experience and skill necessary for success in this action. Class counsel's hourly rates in this case are comparable to all other Plaintiffs Counsel.[7] *See* Co-Counsel Decls., ¶¶ 6, 13.

Class Counsel's hourly rates are comparable to those approved in this District. *See, e.g.*, *Housing Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320738, at *2 (C.D. Cal. Nov. 1, 2005) (noting hourly rates may run up to $1,000.00 per hour in Los Angeles, California, with $125.00 to $650.00 routine in this State); *Anderson*, 2010 U.S. Dist. LEXIS, at *10-*12; *POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633 CAS (JWJx), 2008 W.L. 4351842, at *4 (C.D. Cal. Sept. 22, 2008) (approving partner rates of $475.00 to $750.00 and associate rates of $275.00 to $425.00); *Lingenfelter v. Astrue*, No. SA CV 03-00264-VBK, 2009 WL 2900286, at *4 (C.D. Cal. Sept. 3, 2009) ($600.00 per hour is "fair, reasonable and reasonable compensation.").

Survey data also supports the reasonableness of the rates sought. Each year, the National Law Journal issues a survey of prevailing hourly rates. Courts rely on this annual survey as evidence of prevailing hourly rates. *See, e.g.*, *Yurman Designs, Inc. v. PAJ, Inc.*, 125 F.Supp.2d 54, 58 (S.D.N.Y. 2000); *Yamonouchi Pharm. Co. v. Danbury Pharmacal., Inc.*, 51 F.Supp.2d 302, 305 (S.D.N.Y. 1999).

---

[7] As set forth in the Co-Counsel Declarations, the rates range from $250.00 to $805.00 per hour for attorneys, with the high-end reserved for only the most senior attorneys on the case. Krinsk Decl., ¶ 6; Evans Decl., ¶ 13.

22

Class Counsel's hourly rates, which are on par with the prevailing market rates of attorneys in this District, are reasonable, particularly given counsel's demonstrated skill, experience and reputation in the area of complex class action litigation.

> 2.    The Number of Hours that Class Counsel Devoted to
>        This Litigation Is Reasonable

Class Counsel have devoted a considerable amount of time and effort pursuing this litigation on behalf of nearly 40,000 Class Members, as documented by the supporting declarations submitted by each prosecuting firm. Since its inception, Class Counsel have collectively spent a total of 5,453.05 hours of attorney and litigation support time to during this Action.   Considering the complexity of consumer protection claims asserted, the duration of the litigation, and the scope of the proposed class, the total number of hours worked by Class Counsel is reasonable. *See Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987) (lodestar calculation requires court to determine that time spent by counsel was reasonably necessary).

The extensive and persistent efforts of counsel to bring this litigation to a successful resolution are described at length and in detail in the Joint Declaration. *See* Joint Decl., ¶¶ 5-33.   As detailed therein, Class Counsel conducted an extensive investigation of the legal and factual issues involved in this case.  This extensive fact discovery that lasted through 2013, included, at least, three (3) sets

23

of document requests and numerous interrogatories and requests for interrogatory/requests for admission to JNL covering a wide array of subject matter areas.  Joint Decl., ¶¶ 20-26.

Class Counsel also briefed complex issues arising from plaintiffs' two motions for class certification, as well as JNL's two motion to dismiss, its motion for summary judgment, and its opposition to plaintiffs' motions for class certification.

Class Counsel engaged in extensive arm's-length negotiations with JNL over many months to achieve the proposed Settlement.  This included multiple mediation sessions with the Hon. John K. Judge Trotter (Ret.), along with direct settlement discussions with defense counsel.  Joint Decl., ¶¶ 28-Class Counsel endeavored throughout the litigation to delegate and coordinate the efforts of counsel so as to maximize the impact of their collective resources, while minimizing duplication of efforts and streamlining the prosecution of the case.

The hours that Class Counsel devoted to this case were reasonable and necessary.  Their hard work and commitment have ultimately paid off, as it allowed Interim Co-Lead Counsel to adequately prepare and represent the interests of Class Members in the litigation and during the hard-fought settlement negotiations with JNL.

24

1

### 3.   The Lodestar Calculation

Multiplying the hours spent by Class Counsel and their litigation support staff on the litigation by their respective hourly rates yields a median hourly lodestar of $527.50.   *See* Joint Decl., ¶¶ 51-54; Co-Counsel Decls., ¶¶ 6, 13. The lodestar amount, which again is "strongly presumed" to be reasonable, is within the scope of the $3,080,000 attorney fee and expense award sought by plaintiffs and agreed to by JNL. *Gates*, 987 F.2d at 1397.   Notwithstanding the fact that plaintiffs' fee request is slightly higher than their presumptively reasonable lodestar it is by no means a windfall, and the factors set forth by the Supreme Court in *Blum*, 465 U.S. at 898-900, and the Ninth Circuit in *Kerr*, 526 F.2d at 67, dictate that plaintiffs be awarded the full amount requested.

### 4.   Counsel's Fees Are Reasonable Considering the Time and Labor Required, the Novelty and Complexity of the Litigation, Counsel's Skill and Experience, Results Obtained, and Awards in Similar Cases

In considering the reasonableness of attorneys' fees, the Ninth Circuit has directed courts to consider the time and labor required, novelty and complexity of the litigation, skill and experience of counsel, the results obtained, and awards in similar cases.  *Blum*, 465 U.S. at 898-900; *Kerr*, 526 F.2d at 70.   All of these factors weigh heavily in favor of granting the full award of $3,080,000 in fees and expenses here.

25

a.  Class Counsel Invested an Enormous Amount
of Time and Resources into This Case

To date, Class Counsel and their litigation support staff have expended 5,453.05 hours, totaling $2,539,234.70 in lodestar, and incurred over $66,000 in expenses prosecuting this litigation for the benefit of the settlement class. Joint Decl., ¶¶ 52, 63; Co-Counsel Decls., ¶¶ 6-7 and 13-14. As discussed above and in the Joint Declaration, Class Counsel vigorously litigated the case were challenged by aggressive, skilled and well-funded defense counsel nearly every step of the way. *See generally* Joint Decl. ¶¶ 58-62.

To effectively prosecute this very large and complex class action, Class Counsel had to commit a significant amount of time, personnel and expenses to this litigation on a contingency basis with absolutely no guarantee of being compensated in the end. Despite the significant risks and uncertainty, Class Counsel obtained an outstanding result on behalf of seniors who purchased and took delivery of JNL deferred annuities in California.

b.  The Litigation Featured Many Novel and
Complex Legal and Factual Issues

Many of the core issues that plaintiffs faced in this litigation were novel and complex, including, for example, the appropriate standard for the legal measure of disgorgement under California's Unfair Competition Law statute, the admissibility and use of expert testimony to determine the appropriate relief to the class. Joint Decl., ¶¶ 43-45.

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

       c.    Class Counsel Are Highly Skilled and Experienced in Large and Complex Class Action Litigation

The Court also should consider the experience, skill and reputation of Class Counsel and extensive motion practice. *See Kerr, supra*, 526 F.2d at 70; *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No. 02-ML-1475-DT (RCx), 2005 WL 1594389, at *10-12 (C.D. Cal. June 10, 2005); *Crommie v. Pub. Utils. Comm'n*, 840 F. Supp. 719, 725 (N.D. Cal. 1994).

It took a great deal of skill and experience to achieve the proposed settlement for the benefit of the settlement class. Class Counsel are well-respected leaders in the fields of consumer and class action litigation. *See* Joint Decl., ¶¶ 58-58; Co-Counsel Decls., at Ex. A. From the outset, Class Counsel used their expertise and skill to obtain the maximum recovery for the settlement class. Class Counsel launched a thorough investigation and consulted and retained numerous experts to assist in the evaluation of JNL's deferred annuity policies. Ultimately, plaintiffs collectively dedicated many years to successfully prosecuting this action. During the litigation, plaintiffs defeated JNL's multiple motions to dismiss, prepared, filed two motions for class certification, conducted extensive discovery and document review, opposed JNL's motion for summary judgment, and negotiated a comprehensive settlement on behalf of the Settlement Class. *See generally* Joint Decl.

Had this Settlement not been achieved, complex legal questions would have continued to be the subject of debate. At no time has JNL ever conceded liability, the appropriateness of class certification, or the existence of causation or damages. Given the significant risks and uncertainty associated with this complex class action, it is a testament to Class Counsel's skill, creativity and determination that they were able to negotiate an excellent settlement providing substantial economic relief to all Class Members. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (D. N.J. 2009) (considering skill and efficiency of attorneys involved).

The quality of opposing counsel should also be considered. *See, e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Here, counsel for JNL – Sidley Austin LLP – is a nationally recognized law firm in the defense of class actions. Class Counsel have vigorously litigated, and defense counsel have vigorously defended against, the classwide claims asserted by plaintiffs. Indeed, virtually every point in this litigation has been disputed by JNL.

        d.     Class Counsel Obtained an Outstanding Settlement Result for Class Members

In light of the looming risks and uncertain outcome of the litigation, the results obtained for the Class are outstanding. Plaintiffs have achieved a large and meaningful settlement that provides Class Members tangible economic benefits relating to their JNL annuities in the form of a rebate equal to 22% of all past

1  surrender charges and a 22% reduction of all future surrender charges.  Agreement,

2  ¶ 3(a), (b).  This settlement relief is indeed valuable – valued at $11.239 million in

3

4  the aggregate – and substantial as to each Class Member receiving relief.  *See* Long

5  Decl., ¶ 4.

6           e.     The Fees and Expenses Sought Here Are Well
                  Below Those Awarded in Similar Deferred
7                 Annuity Actions

8        Plaintiffs' fee request is also reasonable in light of fees awarded in other

9

10 similar cases involving the sale of insurance products, including actions involving

11 the sale of deferred annuities to senior citizens.  As an example, in *In re Am.*

12 *Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226

13

14 (E.D. Pa. 2009), an action involving the fraudulent sale of deferred annuities to

15 seniors, the defendant insurance company agreed to settle the case by providing the

16 class with similar relief, although not as strong, to that provided by the Settlement

17

18 here.   *Compare id.*, at p. 231, *with* Agreement, ¶ 5. In *American Investors*,

19 defendant agreed to provide either a bonus or a payment based upon the surrender

20 charges, if any, previously incurred by the policy owners.  *Am. Investors*, 263

21

22 F.R.D. at 245.

23        Similar amounts have been awarded in litigation involving the improper

24 marketing and sale of insurance products.  *Varacallo v. Mass. Mut. Life Ins. Co.*,

25

26 226 F.R.D. 207, 256 (D.N.J. 2005) (applying a 2.83 multiplier in awarding $58.2

27 million in attorneys' fees on total recovery of $698 million of life insurance

28                                                29

policyholder benefits); *Snell v. Allianz Life Ins. Co. of N. Am.*, No. 97-2784(RLE), 2000 WL 1336640, at *19 (D. Minn. Sept. 8, 2000) (awarding $6.6 million in attorneys' fees for 11,000 hours of attorney time totaling $3.2 million under a lodestar approach); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 106 F. Supp. 2d 721, 734 (D. N.J. 2000) (awarding $90 million in attorneys' fees for recovery totaling $1.8 billion in policyholder benefits); *Manners v. Am. Gen'l Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *28-29 (D. Tenn. Aug. 11, 1999) (awarding $19.5 million, or 11.5% of the economic value of the settlement, in attorneys' fees in an action alleging misleading sales practices in connection with sale of whole life policies).

Here, Class Counsel have achieved an outstanding settlement on behalf of seniors who took delivery of JNL deferred annuities in California, and their fee request is wholly in line with awards granted in similar insurance class action cases.

5.   Plaintiffs' Fee Request Is Reasonable in Light of the Contingent Nature of the Fee and Class Counsel's Ongoing Work

Finally, plaintiffs' fee request is reasonable in light of all of the future work and expenses that will be incurred by Class Counsel under the settlement, which will not be included in their current lodestar.  This includes all post-approval work such as claims administration, Class Member communications, any claims dispute,

30

1  appeals, and any other issues that may arise under the Agreement. This future

2  work is substantial and could potentially last for years.

3

4  In sum, plaintiffs' request for an award of $3,080,000 is reasonable and fair,

5  considering the time and labor required to litigate the case, the novelty and

6  complexity of the litigation, the skill and experience of counsel, the valuable

7

8  settlement relief ultimately obtained on behalf of Class Members, and awards in

9  similar cases. The requested award is based a minimal lodestar multiplier and,

10  more importantly, the award of Class Counsel' s fees and expenses will not in any

11

12  way affect the form or amount of the settlement relief and economic benefits

13  provided to Class Members under the Agreement. Agreement, ¶¶ 4-5. The Court

14  should grant the full amount of the fee and expense award, as agreed upon by the

15

16  parties.

17      C.   PLAINTIFFS' FEE REQUEST IS ALSO IN LINE
             WITH THE BENCHMARK PERCENTAGE SET
18           BY THE NINTH CIRCUIT

19      Plaintiffs' fee request, which is plainly reasonable under a lodestar analysis,

20  is also supported under a common fund, percentage of recovery analysis.

21

22      "Courts have relied on 'common fund' principles and the inherent

23  management powers of the court to award fees to lead counsel in cases that do not

24  actually generate a common fund." *In re GMC Pick-Up Truck Fuel Tank Prods.*

25

26  *Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995); *see also Hopson v. Hanesbrands Inc.*,

27  No. CV-08-0844 EDL, 2009 WL 928133, at *11-12 (N.D. Cal. Apr. 3, 2009)

28                                         31

────────────────────────────────────────

MEMORANDUM IN SUPPORT OF MOTION AN AWARD OF ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS

1  (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.
2  1989)).
3

4  Plaintiffs in the Ninth Circuit are normally entitled to an award for attorney
5  fees of a benchmark percentage of 25% of the common fund, but courts have found
6  fee awards of up to 30% to be reasonable. *Graulty*, 886 F.2d at 272; *see also*
7
8  *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1376 (9th Cir. 1993) (reaffirming 25%
9  benchmark); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)
10 (28%); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th
11
12 Cir. 1990) (25%); *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-
13 IEG-JMA, 2009 WL 839841, at *7-8 (S.D. Cal. Mar. 30, 2009) (30% for first $10
14 million and 25% for additional $2 million settlement); *Craft v. County of San*
15
16 *Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (25%); *accord* Thomas
17 E. Willging, Laural L. Hooper & Robert J. Niemic, *Empirical Study of Class*
18 *Actions in Four Federal District Courts: Final Report to the Advisory Committee*
19
20 *on Civil Rules*, at 69 (Federal Judicial Center 1996) ("[m]edian rate[] range[] from
21 27% to 30%") (available at http://ftp.resource.org/courts.gov/fjc/rule23.pdf).
22
23 In determining the amount of the benefit conferred upon a class, the
24 appropriate measure is the total recovery available for that class, not the amount
25 actually claimed by class members after-the-fact. *Boeing Co. v. Van Gemert*, 444
26 U.S. 472, 480-81 (1980); *see also Williams v. MGM-Pathe Commc'ns Co.*, 129
27

28                                             32

1   F.3d 1026, 1027 (9th Cir. 1997) (holding district court abused its discretion in

2   basing fees on class members' claims against fund rather than on a percentage of
3
4   entire fund); *Six Mexican Workers*, 904 F.2d at 1311 (benchmark is 25% of entire

5   fund). This is because the entire settlement is created through the efforts of class

6   counsel for the benefit of the entire class. *Masters v. Wilhelmina Model Agency,*
7
8   *Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (citing *Williams*, 129 F.3d at 1027); *see also*

9   *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999)

10  (finding that fees should be based on entire settlement because class counsel's
11
12  negotiation of $40 million settlement was beneficial to entire class regardless of

13  fact that a reduced number of claims were made).

14
        Here, the total value of the settlement benefits – assuming there was a 100%
15
16  participation rate – was estimated by Plaintiffs' actuary expert at $19.892 million.

17  Yet Plaintiffs more conservatively estimated the expected realizable value of the

18  settlement to be closer to $11.239 million figure valued by Plaintiffs' actuary.
19
20  Long Decl., ¶ 4.  Nonetheless, Plaintiffs' requested award of $3,080,000 (net the

21  separate award of costs) represents 26.8% of the reasonable expected value of the

22  available settlement relief.  This is in line with the 25% benchmark for attorney fee
23
24  awards typically allowed by this Circuit.  Thus, Plaintiffs' request for fees and

25  expenses is clearly within this sanctioned realm.

26

27

28                                    33

---

1
2

## V.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

3

Included within the $3,080,000 sought by plaintiffs to be awarded to Class

4
5

Counsel are significant expenses incurred in connection with the prosecution of

6

this class action. The Ninth Circuit allows recovery of pre-settlement litigation

7

costs in the context of class action settlements. *See Staton v. Boeing Co.*, 327 F.3d

8
9

938, 974 (9th Cir. 2003); *see also* Alba Conte and Herbert B. Newberg, 4 *Newberg*

10

*on Class Actions*, *Class Member Obligations for Litigation Fees and Expenses*

11

§14:2 at 511-513 (4th ed. 2002).  All expenses that are typically billed by attorneys

12
13

to paying clients in the marketplace are compensable. *Harris v. Marhoefer*, 24 F.3d

14

16, 19 (9th Cir. 1994).

15

Class Counsel have submitted separate declarations attesting to the accuracy

16
17

of their expenses.  Class Counsel have incurred expenses in the aggregate amount

18

of $66,126.31 during the time spent prosecuting this litigation. *See* Joint Decl., ¶¶

19

63-66; Co-Counsel Decls., ¶¶ 7 and 14.  As detailed in the Joint Declaration and

20
21

Co-Counsel Declarations, Class Counsel incurred substantial costs on experts,

22

discovery, consultants, travel, computer research, motion practice, photocopies,

23

postage, filing fees, transcripts, and telephone charges.  Joint Decl., ¶ 63; Co-

24
25

Counsel Decls., ¶¶ 7 and 14.

26

Class Counsel were required to travel in connection with this litigation and

27

thus incurred the related costs of airfare, meals, lodging and transportation.  Joint

28

34

Decl., ¶ 65.   In addition, Class Counsel incurred the costs of computerized research.   These are also charges for computerized factual and legal research services including Lexis and Westlaw.   It is standard practice for attorneys to use these services to assist them in researching legal and factual issues.   A significant component of Class Counsel's expenses were the cost of experts and consultants, which were necessary given the difficult and complex financial and actuarial issues presented in this action.   *Id.*, ¶ 64; Co-Counsel Decls., ¶¶ 7 and 14.

All of these costs were necessary and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for the various categories of expenses incurred.   *See* Joint Decl., ¶ 66; Co-Counsel Decls., ¶¶ 8 and 15.

## VI.   THE COURT SHOULD APPROVE THE SERVICE AWARD OF $10,000 FOR EACH CLASS REPRESENTATIVE

For their service and long-term commitment as Class Representatives, Nancy Meadows and Russel Heman respectfully request that the Court approve a service award of $10,000 for each of them (totaling $20,000). "Incentive awards are fairly typical in class action cases."   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); Theodore Eisenberg & Geoffrey P. Miller, *Emerging Issues in Class Action Law: Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (Aug. 2006) (30% of class actions include incentive awards to class representatives).

35

1
2
3
4        In the Ninth Circuit, incentive awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. A court has discretion to approve incentive awards based on, *inter alia*, the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).
5
6
7
8
9
10
11

12       Here, each of the Class Representatives spent a significant amount of time
13  assisting in the litigation of this action. Among other things, they: (i) assisted
14  Class Counsel in gathering facts so that counsel could develop potential legal
15  claims against JNL; (ii) assisted Class Counsel in responding to JNL's written
16
17  discovery requests; (iii) prepared and testified at depositions; and (iv) assisted
18  Class Counsel in negotiating the settlement in this Action. Joint Decl., ¶ 68.
19

20       The amount requested here per Class Representative is comparable to the
21  amount awarded in other cases. *See, e.g.*, *Am. Investors*, 263 F.R.D. 3d at 245
22  (approving incentive awards of $10,500); *In re Mego Fin. Corp. Sec. Litig.*, 213
23
24  F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive award of $5,000); *In re*
25  *Ins. Brokerage Antitrust Litig.*, No. 04-5184 GEB, 2007 WL 1652303, at *10-11
26
27  (D. N.J. June 5, 2007) (approving incentive award of $10,000). The Class

28                                          36

1 | Representatives' efforts and time should not go unrecognized. Plaintiffs

2
3 | respectfully request that the Court approve the service award in the collective

4 | amount of $20,000 to be allocated equally among them.

5 | **VII. CONCLUSION**

6 | For the foregoing reasons, plaintiffs respectfully request that the Court

7
8 | award Class Counsel $3,080,000 in attorneys' fees and expenses, and award each

9 | of the plaintiffs Nancy Meadows and Russel Heman $10,000 (each), for a

10 | cumulative total of $20,000, for their time and effort as Class Representatives in

11 | this successful action.

12

13 | Date: February 27, 2014          Respectfully submitted,

14
15 |                                FINKELSTEIN & KRINSK LLP

16 |                                By: /s/ *Jeffrey R. Krinsk*____

17 |                                Jeffrey R. Krinsk
                                   jrk@classactionlaw.com

18
19 |                                501 W. Broadway, Suite 1250
                                   San Diego, CA 92101

20 |                                Telephone: 619/238-1333
                                   619/238-5425 (fax)

21

22

23 |                                EVANS LAW FIRM, INC.
                                   Ingrid M. Evans

24 |                                Ingrid@evanslaw.com
                                   3053 Fillmore Street, # 236

25 |                                San Francisco, CA 94123

26 |                                Telephone: 415/441-8669
                                   888/891-4906 (fax)

27

28 | 37

MEMORANDUM IN SUPPORT OF MOTION AN AWARD OF ATTORNEY'S FEES,
REIMBURSEMENT OF EXPENSES AND SERVICE AWARDS

1

2     BONNETT, FAIRBOURN,
      FRIEDMAN & BALINT P.C.
3     ANDREW S. FRIEDMAN
      afriedman@bffb.com
4     PATRICIA SYVERSON
5     psyverson@bffb.com
      KIMBERLY PAGE
6     kpage@bffb.com
7     2901 N. Central Avenue, Suite 1000
      Phoenix, AZ 85012
8     Telephone: 602/274-1100
9     602/274-1199 (fax)

10
      ROBBINS GELLER
11    RUDMAN & DOWD LLP
12    THEODORE J. PINTAR
      tedp@rgrdlaw.com
13    STEVEN M. JODLOWSKI
      sjodlowski@rgrdlaw.com
14    655 West Broadway, Suite 1900
15    San Diego, CA 92101
      Telephone: 619/231-1058
16    619/231-7423 (fax)

17
18    BARRACK, RODOS & BACINE
      STEPHEN R. BASSER
19    sbasser@barrack.com
20    402 West Broadway, Suite 850
      San Diego, CA 92101
21    Telephone: 619/230-0800
22    619/230-1874 (fax)

23    Attorneys for Class Plaintiffs

24
25
26
27
28                        38